CHARLES E. SCHWARTZE, executor, &c.,

*v.*

THE CITY OF CAMDEN.

[Submitted February 12th, 1910. Decided February 12th, 1910.]

1. In the absence of legislative authority, a municipal corporation cannot delegate its legislative functions, but it may delegate ministerial or administrative functions to subordinate agents.

2. The legislative body of a municipality may in some cases, without special authorization by the legislature, appoint agents to perform administrative or ministerial acts and clothe them with some degree of discretion, but where the legislature confers on the legislative body of a municipality a power of such quality or in such manner that the exercise of the power in accordance with the legislative intent may reasonably require the deliberate concerted judgment and discretion of the members of the body, there can be no delegation of the power.

3. *1 Gen. Stat. 1895 p. 506 ch. 231*, empowering the council of any city owning water works to purchase, when expedient, such additional land as may be deemed advisable for the improvement and extension of the water-supply, confers powers on the council involving judgment and deliberation which the council may not delegate.

4. The council of a city appropriated a specified sum for the purchase of additional land for the use of the water works. The water committee of the city appointed a sub-committee to contract for the purchase of such lands as the committee thought best. The committee, through the sub-committee, purchased a tract, and reported the same to the council, which confirmed the transaction. The sub-committee made a contract for the purchase of other lands, but no report of such purchase had been made to the water committee or to the council.—*Held*, that the contract made by the sub-committee was not enforceable against the city.

On bill for specific performance of contract for sale of land.

*Messrs. French & Richards,* for the complainant.

*Mr. Edwin G. C. Bleakly* and *Mr. Wilfred B. Wolcott,* for the defendant.

LEAMING, V. C.

The bill is filed to compel the city of Camden to specifically perform a certain alleged written contract in which that city is, alleged to have become bound to purchase from complainant certain real estate. The written agreement for the purchase of the land was made in the name of the city by a sub-committee of the water committee of the city. The city now defends upon the ground that the written instrument referred to is not the contract of the city for the reason that the sub-committee could not lawfully bind the city to purchase the land.

The water which is supplied to the inhabitants of the city of. Camden is procured by the city from artesian wells, which are sunk at various places on land which has been purchased by the city for that purpose. The evidence, though not entirely satisfactory, may be said to sufficiently disclose that the city council of the city of Camden deemed additional land necessary for the purpose named and by an ordinance made $25,000 available for the purpose of purchasing such additional land. The appropriating ordinance merely sets aside $25,000 "for the water department for improving and enlarging the water works system and supply," but the evidence is to the effect that the real purpose was for the purchase of additional land. The evidence does not disclose that any resolution was passed or other affirmative action taken by city council whereby the water committee was specifically given power to enter into any contract or contracts for the purchase of land for the purpose referred to. While the appropriation referred to appears to have been made without specific direction touching its expenditure, I think the evidence may be said to justify the conclusion that the city council assumed that the water committee of the city would take such appropriate steps as should be found necessary to enable the city to procure such land as should be needed for the purpose named.

By resolution of June 6th, 1908, the water committee appointed the mayor, city comptroller, city solicitor and Mr. J. E. Hewitt as a committee to procure options on land for the purpose already referred to. Mr. Hewitt was also a member of the water committee. June 9th, 1908, this sub-committee reported to the water committee that they could not operate to advantage

unless their powers were enlarged and they were given "power to act," and on that date the water committee, by resolution, authorized the sub-committee "to act," thereby, apparently, intending to extend to the sub-committee authority to contract for the purchase of such land as should, in the judgment of the sub-committee, be for the best interests of the city. The sub-committee thereupon consummated an agreement with one Hollingshead for certain land near the pumping station of the water works for $7,550, and made a written report to the water committee of the purchase so made. This report of the sub-committee was approved by the water committee, and on January 20th, 1909, the water committee made a written report to city council wherein the foregoing matters were set forth at length, and city council thereupon by an affirmative vote expressly confirmed that report and ratified the Hollingshead contract. This report of the Hollingshead purchase, and the manner in which the purchase was reported as having been made, is herein set forth at length because of the claim now made in behalf of complainant, that the action taken by city council in its approval of that report operated as a ratification of the contract for the enforcement of which the present suit is pending.

The contract which complainant now seeks to enforce was made by the sub-committee in the name of the city September 15th, 1908, and $200 was on that day paid to complainant on account of the purchase price. The sub-committee has not at any time formally reported the purchase to the water committee, and no report of the purchase has at any time been made to city council. Suit for the enforcement of the contract has become necessary because the officers of the city will not supply to the sub-committee the balance of the purchase price.

The $200, which was paid on account of the contract, appears to have been paid by a check drawn on the fund already referred to; but I find no evidence which justifies the conclusion that city council ever approved of that payment with knowledge that the payment had been made on account of the purchase price of land.

The report of the water committee touching the Hollingshead purchase disclosed to city council that the water committee was

making purchases of land for water works, and that in making the purchases, it was operating through a sub-committee which it had appointed and had clothed with power to make the purchases.    It may therefore be assumed, for present purposes, that the approval of city council of that report gave complete sanction to the plan and was equivalent to an original authorization from city council to the water committee to proceed in that manner in making future purchases.

The single question then presented is whether city council had power to delegate to its water committee authority to purchase land for the extension of its water works system.

It is a well-established principle that, in the absence of express legislative authority for that purpose, a municipal corporation cannot delegate its legislative functions; but may delegate ministerial or administrative functions to subordinate officials or agents.    In *City of Burlington* v. *Dennison, 42 N. J. Law (13 Vr.) 165, 167,* the text of *Dill. Mun. Corp.* is approved as follows:

"The principle that municipal powers or discretion cannot be delegated, does not prevent a corporation from appointing agents and empowering them to make contracts, nor from appointing committees and investing them with duties of a ministerial or administrative character.    The authorized body of a municipal corporation may bind it by an ordinance or resolution, or may, by vote, clothe its officers, agents or committee with power to act for it, and a contract made by persons thus appointed by the corporation will bind it."

The line between legislative powers which may not be delegated and administrative or ministerial powers which may be delegated, cannot be artificially defined with entire accuracy, for it is manifest that the proper exercise of any delegated administrative or ministerial function involves some degree of discretion in any action which may be taken by the agent.    As stated in *Edwards* v. *Watertown, 61 How. (N. Y.) Pr. 463, 488,* an authorization to a janitor to purchase a broom to sweep the council chamber, involves the exercise of some degree of judgment and discretion upon the part of the janitor.    Accordingly, in *Burlington* v. *Dennison, supra,* the power delegated to a com-

mittee to purchase a steam fire engine was sustained. On the contrary, in *Foster* v. *Cape May*, *60 N. J. Law (31 Vr.) 78*, a contract made by a committee with an electric light company for lighting the city for a period of five years was not sustained. After stating that the power to enter into such a contract comprises one of the most important functions of the city government and involves the expenditure of a large amount of money, and that such a contract should be entered into after the most careful consideration and with all the formalities appropriate to the execution of contracts of so much importance, the opinion of the court proceeds:

"We think that a contract such as was contemplated by this resolution should either have been negotiated by the city council or, if the negotiations were conducted by a committee, should have been submitted to the city council for discussion, consideration and adoption, and that the resolution delegating power to make such a contract was not warranted by the statute in question."

The statute referred to was a statute empowering the city council to enter into a contract for lighting the city for a term not exceeding five years. Again, in *State, Danforth, prosecutor,* v. *City of Paterson*, *34 N. J. Law (5 Vr.) 163*, the statute empowered the board of aldermen of Paterson to purchase a suitable site or sites and erect thereon one or more public markets and to employ suitable architects, engineers and other persons necessary to accomplish the purpose. The board of aldermen appointed commissioners to purchase a site and build thereon a public market. In commenting upon this delegation of power the opinion filed in that case says:

"They [the board of aldermen] are herein required to use judgment and discretion in determining the suitableness of the site, and also of the architect, engineer and other persons employed to accomplish the purpose. This they must use, and cannot delegate to others without express legislative authority."

An examination of these and other cases in this and other states discloses that the legislative body of a municipality may, in some cases, without special authorization by the legislature, appoint agents to perform administrative or ministerial acts,

and in so doing clothe the agents with some degree of discretion. But where the legislature confers upon the legislative body of a municipality a power of such inherent quality, or in such manner that the exercise of the power in accordance with the legislative intent may be reasonably said to include the deliberative and concerted judgment and discretion of the members of the municipal legislative body, I think there can be found in the adjudicated cases no justification for a delegation of the discretion so conferred. See *State* v. *Jersey City, 25 N. J. Law (1 Dutch.) 309; State* v. *Zeigler, 32 N. J. Law (3 Vr.) 262; Melick* v. *Washington, 47 N. J. Law (18 Vr.) 254; State* v. *Ocean Grove, &c., 59 N. J. Law (30 Vr.) 110; Tomlin* v. *Cape May, 63 N. J. Law (34 Vr.) 429; Thurlow Medical Co.* v. *Salem, 67 N. J. Law (38 Vr.) 111; Ruggles* v. *Nantucket, 11 Cush. 433, 436; Smith* v. *Morse, 2 Cal. 524; Thompson* v. *Schermerhorn, 6 N. Y. (2 Seld.) 92; Elrya Gas and Water Co.* v. *Elrya, 57 Ohio St. 374; Arnold* v. *Pawtucket, 21 R. I. 15.*

By *Gen. Stat. p. 506 § 231,* the city council or other governing body of all cities of the second class which own water works, are given the power to purchase, when they shall deem it expedient, such additional land within twenty miles of the municipality as they may deem advisable for the improvement and extension of the water-supply of the city. The exercise of the power here conferred not only appropriately demands careful and deliberate consideration and discriminative judgment on the part of the legislative body of the city in the selection of land in quantity, in location and in characteristics best suited to the needs of the works, as well as a determination of a proper price to be paid for such land as may be determined upon, but by the very terms of the act the determination of the "necessity" and "expediency" of these matters is instrusted by the legislature to the legislative body of the municipality. The functions to be exercised by the municipal legislative body in performing the duty here imposed upon it, bear little resemblance to the purchase of an ordinary chattel. The necessity and expediency of purchasing land for an additional supply of water is inseparably connected with the selection of land at a location and of a character which shall appropriately meet the necessity. For the

municipality to delegate these discretions to a committee in a manner that shall operate to deprive its legislative body of the power to finally determine whether such land as the committee may deem it expedient to purchase, is in fact necessary or suitable for the needs on which the very existence of the power to purchase is based, is, in my judgment, an unlawful exercise of the powers intrusted by the legislature to the legislative body of the municipality. Such delegation of power and discretion is in fatal derogation of the trust which the legislature has bestowed upon the municipal legislative body.

The city council of Camden has taken no action in which the specific land which the city may need has been in any manner designated or in which any limitation has been placed upon the amount of land to be purchased by its committee, or in which any limitation has been placed upon the price which may be paid for such land as its committee may determine to purchase, except in making the available appropriation only $25,000, or in which the definite character or quality of the land which the committee may purchase has been defined. The only action which has been taken by city council is the appropriation of $25,000 for the purchase of additional land for the use of the water works and the confirmation of a certain report of the water committee, wherein it appears that that committee, through its sub-committee, has purchased a certain tract of land referred to in that report. So far as the purchase of the tract now in question is concerned, the city council is without official knowledge, for the sub-committee which made the contract of purchase which complainant now seeks to enforce, has not yet reported the purchase to the water committee, and the water committee has not reported the purchase to city council. Should the city be now compelled to comply with the terms of the agreement in question, it will be compelled to purchase a tract of land which the city council has at no time determined to be necessary or suitable for the needs of the city, and of which the city council has not been apprised, either as to location, nature or price.

I am convinced that the contract in question is void for want of lawful authority upon the part of the sub-committee to bind the city to its terms.