PAUL G. DE MURO, PROSECUTOR–APPELLANT, v. NICHOLAS MARTINI, THADDEUS A. BARSZCZ, JULIUS CINAMON AND CITY OF PASSAIC, RESPONDENTS–RESPONDENTS.

Argued January 3, 1949—Decided March 7, 1949.

518

Mr. Aaron Heller argued the cause for prosecutor-appellant (Messrs. Heller & Laiks, attorneys).

Mr. Thomas E. Duffy argued the cause for defendants-respondents (Messrs. Thomas E. Duffy and Nicholas Martini, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. Appellant seeks to set aside the resolution adopted by the Board of Commissioners of the City of Passaic on November 18, 1947 approving a settlement of $37,000 in satisfaction of a claim by Percy S. Simon, an architect, for the preparation of plans and specifications for a veterans' housing project in the City.

In the latter part of 1946 Nicholas Martini, then Mayor and Director of Public Works of the City, conferred with State housing officials relative to a permanent veterans' housing project for the municipality. He sponsored a resolution passed by the Board of Commissioners on January 21, 1947 declaring a shortage in dwelling accommodations and at the same time the Board authorized the Mayor to negotiate for the acquisition of property for the project and "to do any and all things necessary to consummate the plan for proposed permanent veterans' housing he submitted to the Public Housing Development Authority in the State Department of Economic Development and the Board of Commissioners; and to obtain the grant of state funds for said project."

On the same date by letter he contracted with Percy S. Simon, an architect, to prepare preliminary and final plans and specifications and to supervise construction of the five-story apartment at a fee of five per cent of the total cost of construction. This letter contract was filed by Martini in the Mayor's office but was not given general publication at the time.

The Board thereafter unanimously approved the housing agreement between the State Administrator and the City and it was signed on April 23, 1947, the State agreeing to contribute $613,490 to the cost of the project. Construction bids were received on the plans as drawn and were approved by the State Administrator.

An election was held on May 13, 1947 in which Martini and DeMuro were re-elected but two members of the former Board were defeated. An hour before the new administration assumed office on May 20, 1947, Martini filed the letter contract with the City Clerk and its contents became generally known for the first time.

Upon assuming office the new Board assigned the various departments to the elected Commissioners, designating DeMuro Mayor and Director of the Department of Public Works. The Board reserved to itself the power to "levy all taxes, apportion and appropriate all funds and approve all bills, accounts, payrolls and claims and order payment thereof." The following June 3 an ordinance authorizing the issue of bonds of the City

amounting to $820,000 to finance the emergency housing was passed on first reading. It specifically referred to Simon's plans and approved them in the following. terms:

"Section 3.(a) The improvements hereby authorized * * * all to be done in accordance with plans and specifications therefor prepared · by Percy S. Simon, architect, entitled: 'Veterans Housing Project for City of Passaic', dated April 3, 1947, filed in the office of the City Clerk and *hereby approved* * * * " (Emphasis added.)

The submitted construction bids were analyzed by Simon and presented to the Board, which on June 5, 1947 unanimously resolved to award the contracts "in accordance with plans and specifications submitted." The ordinance providing for the housing bond issue, after a public hearing on June 24, was passed upon second and third reading.

The plans and specifications as drawn by Simon required certain changes and corrections by other architects and substantial additional expenditures were incurred. Due to these difficulties, the Board on July 23 relieved Simon from his duties of supervision of the project and terminated his contract. The following month DeMuro by letter contracted to engage another supervising architect without obtaining the Board's approval.

Simon retained legal counsel, claiming $63,810 under the contract, and discussions were held with the Board. DeMuro headed the negotiations and at first apparently was anxious to effect a compromise. Simon finally agreed to accept a settlement of $37,000. Then DeMuro assumed the position that the contract was completely void and nothing should be paid. Nevertheless the Board, with the recommendation of the City Counsel, approved the settlement on November 18, 1947. The validity of that resolution and the contract itself was contested by DeMuro on certiorari to the former Supreme Court, which dismissed the writ.

█ The action of the City in erecting the housing project was taken pursuant to R. S. 55:14G-1 *et seq.* This legislation recognized the acute public emergency arising from the shortage of dwelling accommodations and sought to provide public housing as readily as possible. Municipalities were empowered to act by resolution, R. S. 55:14G-17, and local budgetary and

contractual restrictions were made inapplicable. *R. S.* 55:14G–18. In view of this exemption, decisions based upon those statutory limitations are not pertinent. *Cf. Murphy v. West New York,* 132 *N. J. L.* 595 *(Sup. Ct.* 1945*); Samuel v. South Plainfield,* 136 *N. J. L.* 187 *(E. & A.* 1947*).*

Here the Board of Commissioners, being fully informed of Martini's preliminary inquiries with the State housing agency concerning the municipal housing plan and mindful of the need to have those plans prepared immediately for a forthcoming meeting with the State Administrator, gave him full authority by its resolution of January 21, 1947 to take all necessary steps to obtain the housing facilities for the City. Admittedly the services of an architect were necessary to draw up preliminary and final plans for State approval before any State funds could be obtained. Under the circumstances Martini had full authority to enter into the contract with Simon, rendering the same valid and legal.

■ It is claimed this method of entering into the contract was violative of *R. S.* 40:74–1, which states:

"Except as otherwise required or permitted by law, every ordinance or resolution appropriating money \* \* \* or authorizing the making of a contract \* \* \* shall be complete in the form in which it is finally passed and remain on file with the municipal clerk for public inspection at least two weeks before the final passage or adoption thereof."

The provisions of *R. S.* 55:14G–1 *et seq.* establish a detailed procedure for the construction of emergency public housing. In view of the intent to set up a comprehensive method for the contracting, supervision and financing of that need, the legislation must be deemed to come within the introductory exclusionary phrase of *R. S.* 40:74–1.

■ Even were we to hold the contract with Simon was not executed according to statutory requirements, the record shows clearly the contract was ratified by appropriate action of the Board of Commissioners. Subsequent to the disclosure of the agreement on May 20, 1947, the Board enacted a bond ordinance to raise funds for the municipal contribution to the cost of construction. In that ordinance special reference

was made to the plans and specifications prepared by Simon and the same were specifically approved. A municipality becomes bound either by formal, preliminary act authorizing a thing to be done, or, in the absence of such preliminary act, by ratification. *Campbell v. Hackensack,* 115 *N. J. L.* 209 *(E. & A.* 1935). Where there is no lack of power in the municipality to make a contract and the defect is merely an irregular exercise of that power or in the exercise by an unauthorized agency, recovery may be had if the contract is subsequently ratified and confirmed by the corporate body. *Potter v. Metuchen,* 108 *N. J. L.* 447 *(Sup. Ct.* 1931). An ordinance directing payment of a just claim previously incurred by a municipality constitutes effective ratification to bind the municipality as though the obligation had been first properly authorized. *People's Water Co. v. Millville,* 95 *N. J. Eq.* 732 *(E. & A.* 1924).

█ Appellant asserts he solely has the power to adjust this claim against the municipality on the ground that Passaic operates under the commission form of government, *R. S.* 40:70-1 *et seq.,* and that the adjustment of claims is purely an executive or administrative act to be exercised by the director of the department in which the claim arose.

This reasoning overlooks the fact that the Board upon assuming power on May 20, 1947 and assigning powers to the five departments specifically reserved to itself the power to approve all claims and order payment thereof. This action was taken pursuant to the statutory directive that the Board is to determine the powers and duties to be performed by each department and shall assign such powers and duties as it may deem appropriate. *R. S.* 40:72-5. The reservation is in plain, unmistakable language and has not been shown to be repugnant to any statutory provision regarding the commission form of government.

The power to adjust claims against the municipality is expressly covered by the provisions of *R. S.* 40:48-13 and 17, respectively, as follows:

"Unless otherwise provided by ordinance all claims against any municipality and debts to be paid thereby, shall be presented to the mayor or other chief executive officer for his approval or disapproval."

"The board or body presenting any claim for approval, may by majority vote of all its members order the payment thereof, notwithstanding the disapproval of the mayor or other chief executive officer, in which case it shall be paid and proper warrant issued therefor, in the same manner as other bills are paid."

· In the absence of State legislation or municipal ordinance to the contrary, these provisions apply to all municipalities. The record does not disclose any ordinance of the City providing for the adjustment of claims apart from the aforementioned resolution. Nor has any statute inconsistent with these sections been shown to apply. We conclude the governing board as a body was vested with the power to adjust the instant claim.

As to the contention that costs should be taxed against the respondents, we find no merit in the reasons stated to justify a departure from the general rule. In accordance with the usual practice, costs will be taxed in favor of the prevailing party. *Rule* 1:4–11.

The judgment of the court below is affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices OLIPHANT, WACHENFELD, and ACKERSON—4.

*For reversal:* Justice HEHER—1.