82 N.J. Super. 36 (1963)
196 A.2d 550
SIDNEY RIDDLESTORFFER, JR., AND MAUDE RIDDLESTORFFER, PLAINTIFFS,
v.
CITY OF RAHWAY, ROBERT HENDERSON, AS MAYOR, ROBERT SCHROF, AS CLERK AND AS BUSINESS ADMINISTRATOR, JAMES J. KINNEALLY, AS TREASURER, EUGENE KENNA, AS CHIEF AUDITOR, AND CLIFFORD E. COMER, AS PRESIDENT OF THE COUNCIL OF THE CITY OF RAHWAY, AND MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 20, 1963.
*41 Mr. Orlando H. Dey for plaintiffs.
Mr. Joseph M. Feinberg for defendants City of Rahway, Robert Henderson, Robert Schrof, James J. Kinneally, Eugene Kenna and Clifford E. Comer (Messrs. Feinberg & Feinberg, attorneys, Mr. Fred Dubowsky on the brief).
Mr. Eugene M. Haring for defendant Massachusetts Mutual Life Insurance Company (Messrs. McCarter & English, attorneys).
FELLER, J.S.C.
This is a suit in lieu of prerogative writs, brought by two taxpayers of the City of Rahway against the city, various city officials and the Massachusetts Mutual Life Insurance Company, a Massachusetts corporation authorized to do business in New Jersey.
Plaintiffs contend a contract between the city and the insurance company is unconstitutional, ultra vires, illegal and null and void. They seek rescission and repayment of any moneys paid. The contract complained of was an insurance contract providing hospitalization benefits for employees of the city, their spouses and children, with premiums to be paid by the expenditure of public moneys. It is alleged that this contract is unconstitutional in that it involves a giving of public moneys in aid of individuals, thereby violating N.J. Constitution 1947, Art. VIII, Sec. III, par. 2. In addition, it is also alleged that the money for the contract was unlawfully appropriated and that the contract was entered into unlawfully.
*42 Defendants have denied all the material allegations of the complaint and the case is now before the court on cross-motions for summary judgment.

I.
Defendant city, in support of its motion for summary judgment, urges that the time limitations imposed upon the bringing of in lieu suits has expired. The limitations may be found in R.R. 4:88-15. R.R. 4:88-15(a) states that proceedings in lieu of prerogative writs shall be commenced within 45 days of the accrual of the right to such review, hearing or relief, except as provided in R.R. 4:88-15(b) and in R.R. 1:3-1 (time to appeal).
In the first place, it is felt that the applicable section of R.R. 4:88-15 is section (a) and not (b). R.R. 4:88-15(b)(2) and (11) refer to review of assessments or awards made for municipal improvements and review of ordinances for improvements. "Improvement" has been defined generally as a valuable addition to property. See Black's Law Dictionary (3d ed.), page 927. An insurance policy providing certain benefits (hospitalization, medical-surgical and major medical) is not within the purview of the word "improvements" as used in R.R. 4:88-15(b)(2) and (11). Neither would such contract come under the definition of local improvements found in N.J.S.A. 40:56-1. Since the instant action is not covered by any other provision of R.R. 4:88-15(b), it would have to come under R.R. 4:88-15(a), the general time limitation for bringing in lieu suits.
Without delving into the question of when plaintiffs' right of review arose, and whether the suit was commenced after the time for review had expired, the court notes that enlargement of the time limitation is permitted, although this should be done only in exceptional cases and where the most persuasive circumstances exist. Testa v. Town of Bloomfield, 71 N.J. Super. 66 (Law Div. 1961); Robbins v. Jersey City, 23 N.J. 229 (1957). Thus, it has been recognized that *43 the time limitation on the in lieu procedure may not apply where substantial constitutional questions are raised. Holloway v. Pennsauken, 12 N.J. 371 (1953); McKenna v. New Jersey Highway Authority, 19 N.J. 270 (1955). It is to be noted that the waiver of the time limitation in cases presenting constitutional questions was utilized even before the liberalizing provision of R.R. 4:88-15, section (c) was added in 1957.[1]
The time limitation of R.R. 4:88-15(a), even if applicable here, should not be a bar to the instant action since a constitutional question, seemingly novel in New Jersey, is presented by the complaint.

II.
The complaint alleges that the statute authorizing counties and municipalities to pay the premiums on group insurance policies for their employees, their spouses and children, violates the New Jersey Constitution. The constitutional provision involved is Art. VIII, Sec. III, par. 2:
"No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation."
The statutory authority for group insurance plans covering city employees is contained in N.J.S.A. 40:11-15.1 and N.J.S.A. 40:11-16.1, which read as follows:

"40:11-15.1 Deductions from salaries for group insurance
In any county, municipality, school district, or agency thereof where the employees of the county, municipality, or agency thereof, or the employees of the school district who are in the classified service of civil service, have or shall have formed themselves into groups for the purpose of obtaining the advantages of a group plan of life insurance, *44 a group plan of health and accident insurance, a group plan for any hospital service or a group plan for medical and surgical insurance, or 1 or more of them, for themselves, or for themselves and their husbands or wives and dependent children under 19 years of age, the governing body of the county, municipality, school district, or agency thereof, when written petitions and authorizations signed by the employees as individuals, are filed with the receiving and disbursing officer of the county, municipality, school district, or agency thereof, may authorize, by resolution, the deductions specified in the written petitions and authorizations, and the payment of them to the designated fiscal agent of the group. Nothing herein contained shall be deemed to authorize coverage of dependents of an employee under a group life insurance policy or to allow the issuance of a group life insurance policy on which the entire premium is to be derived from funds contributed by the insured employees." (L. 1960, c. 180, p. 723, sec. 1)

"40:11-16.1 Part payment of premium by governing board of counties, etc.; limitation
Whenever a group has or shall have been established in accordance with the provisions of section 1 of this act, the governing body of the county, municipality, school district, or agency thereof in which the group or groups are formed, may pay, as additional compensation to the individual members of the group or groups, a part or all of the premium on the group policy or policies covering themselves, or themselves and their husbands or wives and dependent children under 19 years of age.
Nothing herein contained shall be construed as compelling the governing body of any county, municipality, school district, or agency thereof to pay any portion of the premium on such group or groups." (L. 1960, c. 180, p. 724, sec. 2; emphasis added)
There is no case in New Jersey construing the cited statutes. Whether they are in conflict with the constitutional provision is a novel question. It is elementary that the courts will incline to a construction favoring the validity of a statute unless its invalidity plainly appears. All presumptions favor the validity of legislative enactments, and a statute should not be held unconstitutional unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt. Behnke v. New Jersey Highway Authority, 13 N.J. 14, 25 (1953); Stothers v. Martini, 6 N.J. 560, 567 (1951); Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956).
*45 The historical purpose of Art. VIII, Sec. III, par. 2, was to prevent aid to private corporations not constituting public agencies controlled by the State. City of Camden v. South Jersey Port Commission, 2 N.J. Super. 278 (Ch. Div. 1949), affirmed 4 N.J. 357 (1950). It has also been said that the reason that this provision was put in the Constitution was because of a practice that had grown up, very largely in the West, in the furtherance of aid to railroads and other private corporations. Carr v. Borough of Merchantville, 102 N.J.L. 553 (Sup. Ct. 1926). Our Supreme Court was faced in Hoglund v. City of Summit, 28 N.J. 540 (1959), with the question of whether an ordinance of the City of Summit, proposing the use of public moneys to lay out and improve a new street to be opened on a tract upon which a corporation not for pecuniary profit was erecting a housing project, was violative of Art. VIII, Sec. II, par. 2. After citing the Carr case, supra, the court went onto say:
"The basic test is whether the municipal action under attack may fairly be characterized as primarily a public one." (28 N.J., at p. 548)
See also Lynch v. Borough of Edgewater, 8 N.J. 279, 291 (1951).
It is felt that the purchase of group insurance by a municipality does satisfy the public purpose requirement. The analogy between the purchase of group insurance and contributions by a municipality to a city employee's pension fund may aptly be drawn here. The constitutionality of the latter has long been sustained in New Jersey when the same objections as here were raised. Emanuel v. Sproat, 136 N.J.L. 154 (Sup. Ct. 1947), affirmed 137 N.J.L. 610 (E. & A. 1948); Hayes v. City of Hoboken, 93 N.J.L. 432 (E. & A. 1919). In the Hayes case it was said that "moneys paid for pensions are a part of the compensation to be paid for the services rendered by members of the force, and are an inducing cause to their enlistments." It would not be too strained a construction to say that the payment of health benefits by *46 the city is similarly compensation and an added inducement to seek municipal employment, thereby satisfying the public purpose requirement, Nohl v. Board of Education of Albuquerque, 27 N.M. 232, 199 P. 373, 16 A.L.R. 1085 (Sup. Ct. 1921), and N.J.S.A. 40:11-16.1, supra, provides that such payments are additional compensation.
The trend of decisions in most jurisdictions where the payment of group insurance premiums has been contested is to uphold such expenditures as being for a public purpose and therefore constitutional, and not an attempt to lend credit or grant public money in aid of individuals. See, e.g., Fessier v. Campbell, 2 Cal.2d 638, 42 P.2d 1020 (Cal. Sup. Ct. 1935); City of Red Wing v. Eichinger, 163 Minn. 54, 203 N.W. 622 (Minn. Sup. Ct. 1925); State ex rel. Thompson v. City of Memphis, 147 Tenn. 658, 251 S.W. 46, 27 A.L.R. 1257 (Tenn. Sup. Ct. 1923); Bowers v. City of Albuquerque, 27 N.M. 291, 200 P. 421 (N. Mex. Sup. Ct. 1921); Nohl v. Board of Education, supra; Lower Colorado River Authority v. Chemical Bank & Trust Co., 185 S.W.2d 461 (Tex. Ct. Civ. App. 1945); People v. Standard Accident Ins. Co., 42 Cal. App.2d 409, 108 P.2d 923 (Cal. D. Ct. App. 1941); Lage v. City of Marshalltown, 212 Iowa 53, 235 N.W. 761 (Iowa Sup. Ct. 1931); Opinion of the Justices, 249 Ala. 88, 30 So.2d 14 (Ala. Sup. Ct. 1947).
As early as 1923, the Supreme Court of Tennessee in State ex rel. Thompson v. City of Memphis, supra, in rejecting the claim that premiums of insurance constituted an appropriation of public funds for a private purpose, stated the current view with respect to group insurance as follows:
"The large enterprises of this country have reached a wonderful condition of economic efficiency, and, according to the stipulation, they are adopting the group insurance system for the benefit of their employes. If it is beneficial to them, why would it not be beneficial to our municipalities? While we are not concerned with the policy of the governing authorities of our municipalities, the foregoing observation meets the argument that if this action is sustained all other municipalities will adopt this policy. To this there can be no objection if, as an economic measure, it is to the best interest of the municipalities *47 to adopt it. There is no law requiring municipalities to provide its employes with such insurance, and it will not be presumed that they will do so unless they receive a benefit therefrom, and should it fail to produce the anticipated results it can be discontinued at any time. Certainly such an investment is of benefit to the wage earner."
Similarly, in Nohl v. Board of Education, supra, the Supreme Court of New Mexico stated that the fact that group insurance for teachers enabled the board of education to procure better teachers and prevent frequent changes in the teaching force was "certainly desirable and conducive to the `proper conduct of the public schools.'"
See also 3 McQuillin, Municipal Corporations (3d ed. 1963), § 12.173. Only one case in a foreign jurisdiction which supports plaintiffs' contention has been brought to the attention of the court. In People ex rel. Terbush & Powell v. Dibble, 196 App. Div. 913, 186 N.Y.S. 951 (Sup. Ct. 1921), the court invalidated a similar contract of insurance. However, the same court explicitly notes that there is no legislative authority for insuring city employees, as there is for granting pensions to the same employees. There is legislative authority for insuring city employees in the present case. See N.J.S.A. 40:11-15.1 and 40:11-16.1, supra.
For the foregoing reasons, this court holds that inasmuch as the payment of medical benefit premiums by the municipality serves a public purpose, such action is not a donation of public money in violation of N.J. Constitution 1947, Art. VIII, Sec. III, par. 2.

III.
Plaintiffs contend the amendment of the proposed budget at the February 5, 1963 meeting of the municipal council extending benefit coverage to spouses and dependents of city employees was not made in conformity with the requirements of N.J.S. 40A:4-9(c), which reads as follows:
"c. No amendment by the governing body shall be effective until taxpayers and all persons having interest therein shall have been granted a public hearing thereon, if such amendment shall:
*48 1. add a new item of appropriation in an amount in excess of 1% of the total amount of appropriations as stated in the approved budget, or
2. increase or decrease any item of appropriation by more than 10%, or
3. increase the amount to be raised by taxes by more than 5%, unless the same is made to include an emergency temporary appropriation only.
Notice of hearing on any amendment shall be advertised at least 3 days before the date set therefor. Any such amendment must be published in full in the same manner as an original publication."
N.J.S. 40A:4-9(c) applies to amendments made after approval of the budget. If it were otherwise, two public hearings would be required  one before approval at the time of the amendment, and one after approval and before adoption. Furthermore, N.J.S. 40A:4-7 provides for public hearing only after approval of the budget. The additional $30,000 to pay the premium to extend the benefit coverage to spouses and dependents of city employees was added to the proposed budget prior to its approval, and, accordingly, the provisions of N.J.S. 40A:4-9(c) do not apply.
Plaintiffs next contend that by the execution of the contract with Massachusetts Mutual Life Insurance Company and the payment of the $5,000 premium, the city undertook to incur a liability and to enter into a contract involving the expenditure of money for a purpose for which no lawful appropriation was provided, and which was in excess of the amount unlawfully appropriated, in violation of N.J.S. 40A:4-57. If the statute authorizing payment of premiums by the municipality is lawful, then the appropriation pursuant thereto is lawful. There is a question as to whether sufficient moneys were appropriated in the budget to cover the cost of the contract. N.J.S. 40A:4-57 states that no contract shall be entered into involving the expenditure of money in excess of the amount appropriated. $5,000 was paid as the first month's premium on this benefit plan. However, it seems that the contract only became effective in June 1963. Thus there is no doubt that ample funds for the payment of premiums for the remainder of the fiscal year (calendar year) *49 have been appropriated. If the contract term extends into the following year, sufficient funds to cover its cost for the first year need only be appropriated in that year. Fereday & Meyer Co., Inc. v. Elizabeth Board of Public Works, 27 N.J. 218, 225 (1958); De Bow v. Lakewood Township, 131 N.J.L. 291 (Sup. Ct. 1944). It is clear that there has been compliance with N.J.S. 40A:4-57.

IV.
Even if the constitutionality of the statute in question (N.J.S.A. 40:11-16.1) is sustained, plaintiffs contend it only provides for the deduction from salary of the employees and not for the making of a contract by the city with the insurance carrier. Presumably their interpretation would be that the city must make payments to the employee as additional compensation (N.J.S.A. 40:11-16.1, supra), after the employee group has entered into a contract with the insurance carrier. Following this, the city would deduct the premium payments from the employee's salary and pay them to the fiscal agent of the group.
N.J.S.A. 40:11-16.1 does not expressly authorize the making of a contract by the city with the insurance carrier for the payment of premiums. If the contract is one which the municipality has no power to make, it is ultra vires and unenforceable. 10 McQuillin, op. cit., § 29.02, p. 159. However, it is settled in New Jersey that grants of power given to municipal governments must be construed liberally, and the powers of such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication or incident to the powers expressly conferred. Const. 1947, Art. IV, Sec. VII, par. 11; R.S. 40:42-4; Mullin v. Ringle, 27 N.J. 250 (1958); Kirzenbaum v. Paulus, 51 N.J. Super. 186 (Law Div. 1958), affirmed 57 N.J. Super. 80 (App. Div. 1959).
In addition to this liberal grant of power to municipalities, the provisions of the Faulkner Act (N.J.S.A. 40:69A-1 *50 et seq.) are applicable to the City of Rahway, which has adopted a plan pursuant to the act. N.J.S.A. 40:69A-29 provides that:
"Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:

* * * * * * * *
(c) sue and be sued, to have a corporate seal, to contract and be contracted with, to buy, sell, lease, hold and dispose of real and personal property, to appropriate and expend moneys, and to adopt, amend and repeal such ordinances and resolutions as may be required for the good government thereof; * * *." (Emphasis added)
Further, N.J.S.A. 40:69A-30 states that:
"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality." (Emphasis added)
It was the intendment of the Faulkner Act to confer the greatest possible power of local self-government, consistent with the New Jersey Constitution, upon municipalities adopting a plan pursuant to the act. N.J.S.A. 40:69A-30, supra; City of Newark v. Dept. of Civil Service, 68 N.J. Super. 416, 425 (App. Div. 1961). Furthermore, any specific enumeration of municipal power contained in any general law does not limit the general description of power contained in that act, unless in conflict therewith, but rather is to be construed as in addition and supplementary to the powers conferred in general terms by N.J.S.A. 40:69A-26 to 30, dealing with incorporation and powers under the Faulkner Act. N.J.S.A. 40:69A-30 supra.
*51 Although, as has previously been said, the statute does not expressly empower the municipality to contract, it is evident that this power is incidental to the power of paying part or all of the premiums, which is expressly granted. The Faulkner Act expressly confers upon municipalities coming within its provisions the power to contract. In the face of this provision and the legislative and judicial mandate that legislation concerning municipal corporations shall be liberally construed in their favor, Const. 1947, Art. IV, Sec. VII, par. 11; N.J.S.A. 40:42-4; Mullin v. Ringle, supra; Kirzenbaum v. Paulus, supra, this conclusion is inescapable. If the city were merely to pay part or all of the premiums over to the employee group, as contended for by plaintiffs, it would not be able to exercise any control over the use of public moneys. By contracting itself, when it elects to pay part or all of the premiums, control of the use of these public funds is guaranteed. It is therefore the opinion of this court that the city could rightfully enter into the contract with the insurance carrier.

V.
Plaintiffs next contend that the city clerk has no power to enter into contracts for the city, nor to pay or incur liability to the insurer. On the other hand, defendants claim that the city clerk or business administrator (the same person in Rahway) has such power under the Administrative Code of the City of Rahway. Title 2, c. 4, § 4 of the Code provides:
"Insurance Policies. All insurance relating to any risk of loss by the city government shall be purchased by the City Clerk, who shall retain the custody of and safely keep the insurance policies." (Emphasis added)
There is no "risk of loss by the city government" covered by a group insurance policy on employees. Any risk of loss is solely on the employee. Therefore, this section is inapplicable.
*52 By Title 2, c. 7, § 3(f) of the Code, the business administrator is responsible for the purchase of all contractual services required by any department, office or agency of the city government. This would seem to be an all-encompassing provision, including the purchase of group insurance on employees. Be this as it may, the "purchase" of insurance (2-4-4) and the "purchase" of all contractual services (2-7-3(f)) are merely ministerial duties and cannot partake of the responsibilities vested in the governing body by general law. That is, an administrative officer cannot assume, or have delegated to him, the duties which are appropriately those of the governing body.
At times binding contracts may be entered into by an administrative officer on behalf of the municipality. City of Burlington v. Dennison, 42 N.J.L. 165 (E. & A. 1880). However, this is only true when sufficient guidelines have been laid down by the governing body in exercising its discretion in the matter. After this the power conferred upon the administrative officer becomes merely ministerial. Foster v. City of Cape May, 60 N.J.L. 78, 80 (Sup. Ct. 1897). However, in the instant case I can find no indication of an exercise of discretion on the part of the governing body. It seems to have determined only that insurance on its employees and officers was necessary. Pursuant to this, it then appropriated a sum of money to cover the cost. In Schwartze v. City of Camden, 77 N.J. Eq. 135 (Ch. 1910), it was said:
"But where the legislature confers upon the legislative body of a municipality a power of such inherent quality, or in such manner that the exercise of the power in accordance with the legislative intent may be reasonably said to include the deliberative and concerted judgment and discretion of the members of the municipal legislative body, I think there can be found in the adjudicated cases no justification for a delegation of the discretion so conferred." (77 N.J. Eq., at p. 140)
The above case is very near to the instant case. In Schwartze the governing body appropriated the money for the purchase of land, but left the purchase up to a committee. The court held that the contract entered into was void and not binding *53 on the city. The contract involved such an exercise of discretion as to location, nature and price of the land as to make it properly one for the considered judgment and deliberation of the governing body.
In the instant case the only official contact the governing body had with the contract entered into was by initially appropriating money to pay for health insurance. The court feels that due to the high cost of the insurance and its importance to the community, the governing body should have participated in the negotiations, at least to the extent of approving the choice of carriers before the contract was actually entered into, and after being apprised of the various proposals. See Foster v. City of Cape May, supra, 60 N.J.L., at page 81. Such a holding accords with the general rule that whenever a power is conferred upon a municipal corporation by the Legislature, and no officer or person is expressly authorized to exercise such power, the governing body of the municipality is the only authority which can exercise it. 4 McQuillin, op. cit., § 12.74, p. 325.
However, even if it be held that the business administrator had no authority to enter into the contract in question, the governing body could ratify his act, since, as was previously stated, the contract was one which the corporation could lawfully make. Bourgeois v. Board of Chosen Freeholders of Atlantic County, 82 N.J.L. 82 (Sup. Ct. 1911). In the case of De Muro v. Martini, 1 N.J. 516 (1949), it was said:
"Where there is no lack of power in the municipality to make a contract and the defect is merely an irregular exercise of that power or in the exercise by an unauthorized agency, recovery may be had if the contract is subsequently ratified and confirmed by the corporate body." (1 N.J., at p. 522)
The principle of ratification has been said to apply to a municipal corporation the same as to an individual, as to the contracts which have been unauthorizedly entered into in its behalf, if it could have originally authorized such contracts. Campbell v. City of Hackensack, 115 N.J.L. 209 *54 (E. & A. 1935). The making of contracts by an unauthorized agent are said to be ultra vires in the secondary sense, whereas contracts entirely beyond the municipal jurisdiction are ultra vires in the primary sense. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957). The former can be ratified, while the latter may not be. Ratification may be by inaction, as well as by affirmative action. Such inaction may consist of the acceptance of benefits under the contract. City Affairs Committee of Jersey City v. Board of Commissioners of Jersey City, 132 N.J.L. 552 (Sup. Ct. 1945), affirmed 134 N.J.L. 180 (E. & A. 1946). In the instant case it must be found that there was such a ratification, at least as to the making of the contract by an unauthorized agency, both by the absence of any disavowal of the contract and by the acceptance of benefits under the contract at a time when all the material facts were known by the responsible officials.
Furthermore, there is no statutory requirement that contracts of group insurance be awarded to the lowest responsible bidder after the reception of publicly advertised bids. There being no statute requiring competitive bids for contracts for group insurance, the municipality was under no obligation to award such contract. If the statutes do not apply, the municipality had the right to award the contract to the bidder it felt would best serve the interests of the taxpayers. A.C. Schultes & Sons v. Haddon Township, 8 N.J. 103, 107 (1951). The municipality did hold hearings on the budget, which included the appropriation for group insurance. It prepared specifications. It considered various proposals and it determined that the contract in question was a proper one. According to defendants' evidence the members of the Rahway Fire Department, Police Department, Department of Public Works and city hall employees on May 27, 1963 determined that the Massachusetts Mutual plan was the one plan that would give them maximum coverage at a reasonable rate.

*55 VI.
The applicable statutes, N.J.S.A. 40:11-15.1 and 40:11-16.1, which authorize the payment of premiums refer to "employees," but do not define the term. We are immediately presented with the question of what the Legislature intended when it used the term "employees." Specifically, does this term encompass officers as well as employees? The question must be answered in the affirmative. This view seems to have been recognized by the Legislature in 1951 when it extended Old Age and Survivors Insurance to "persons holding office, position or employment in the service of * * * any * * * municipality." N.J.S.A. 43:22-2(c) states that the term "employee" includes "any person holding office, position or employment in the service of * * * any * * * municipality * * *." Statutes on cognate subjects may be referred to in arriving at the legislative intent though not strictly in pari materia. State v. Brown, 22 N.J. 405, 415 (1956); 2 Sutherland, Statutory Construction, (2d ed.), § 443, pp. 847, 848. See also La Polla v. Board of Chosen Freeholders of Union County, 71 N.J. Super. 264 (Law Div. 1961), in which this court held, in effect, that an employee includes any person holding office, position or employment in a county or municipality, etc.
However, does this definition of "employee," which comprehends those holding office, include the members of city council, the governing body of the municipality, and does it include the mayor, who is the head of the executive and administrative department of the city government? In other words, are the members of the legislative branch of the municipal government and the head of the executive and administrative branch of the government included within this broad definition of the term "employees"? This question was not raised or discussed during the oral argument, and none of the cases cited by defendants in support of their contentions include coverage for members of the governing body or mayor or those in similar offices or positions. Do the *56 members of city council and the mayor come within the definition of "employees," or are they considered "employees" of the City of Rahway? On this question see Toomey v. New York State Legislature, 2 N.Y.2d 446, 161 N.Y.S.2d 81, 141 N.E.2d 584 (Ct. App. 1957), in which a majority opinion and a dissenting opinion were rendered in a workmen's compensation appeal.
Another aspect of this contract has been presented which the court feels may render the contract ultra vires if the same is not severable. The city under the contract has engaged to pay the premiums of health insurance on its employees as well as employees retiring after January 1, 1963. N.J.S.A. 40:11-15.1 and 40:11-16.1, which authorize the payment of such premiums, refer to "employees," but without defining this term. We are immediately presented again with the question of what the Legislature intended when it used the term "employees." It is the opinion of this court that the Legislature did not intend the benefits conferred under the act to apply to retired employees. Such a construction would result in a holding that the municipality could compensate such individuals while receiving nothing in return. In such a case there would be no quid pro quo. Since the payment of insurance premiums is sustained as being additional compensation, if there are no present services performed by the employee, it follows that there can be no valid payment of compensation. A payment of pension benefits after retirement is distinguished in that a pension is a reward for past service, Salz v. State House Commission, 18 N.J. 106 (1955), while health insurance benefits are additional compensation for present services rendered.
Furthermore, there is no reference in the applicable statute to "retired employee," whereas a pension, by its nature and by statute, is payable upon retirement, disability, etc. By paying the premiums on retired employees, the municipality has exceeded its statutory authority.
Since the city lacked the power to enter into the contract to cover retired employees, the making of the contract may be *57 ultra vires in the primary sense and, as such, could not be ratified. Johnson v. Hospital Service Plan of N.J., supra. However, if the ultra vires portion is separable from the rest, the legal portion is enforceable. Mannion v. Greenbrook Hotel, 138 N.J. Eq. 518 (E. & A. 1946); see also 3 Restatement, Contracts, § 603, p. 1119. Since this question was not argued, it must be determined at a later date. At that same time the court will also hear argument on the question of whether the word "employee" used in N.J.S.A. 40:11-15.1 encompasses the mayor and council.
Therefore, it is the opinion of this court that:
(1) This suit was started within the time limitation required by the rules of court;
(2) The action of the municipality did not constitute a donation of public money in violation of the N.J. Constitution 1947, Art. VIII, Sec. III, par. 2;
(3) The amendment to the proposed budget of the City of Rahway was in conformity with the statutes;
(4) The city had the authority to enter into a contract with the insurance carrier;
(5) The contract executed by the business administrator of the city was ratified by the governing body.
However, several questions raised above cannot be determined at this time. Further oral argument will be necessary for this purpose. The matters to be discussed are whether or not the members of city council and the mayor are included within the definition of the term "employee," and whether the contract is severable since the statute does not cover retired employees and perhaps does not include the mayor and members of city council.
NOTES
[1] "(c) Where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) of this rule."