Mr. Robert K. Robinson North Port City Attorney 2750 Ringling Boulevard, Suite 3 Sarasota, Florida 34237
Dear Mr. Robinson:
On behalf of the City Commission of the City of North Port, you ask substantially the following questions:
1. May the City of North Port provide health insurance to its city commissioners?
2. Are benefits such as insurance considered compensation under Florida Law?
Question One
You refer to an earlier opinion of this office, Attorney General Opinion 02-30, which concluded that commissioners of a mosquito control district were not statutorily authorized to receive benefits such as medical insurance or accidental death or disability insurance, but were instead limited to receiving a salary and reimbursement of expenses as provided in section112.061, Florida Statutes. In light of the conclusions reached in the above opinion, you ask whether the city may offer its city commissioners benefits such as health insurance.
The conclusions reached in Attorney General Opinion 02-30 were based on a consideration of the powers and duties granted to the mosquito control district by statute. As a special district, the mosquito control district possessed only such authority as had been expressly granted by statute or necessarily implied therefrom.[1]
The enabling legislation for the mosquito control district provided only that members of the district's board of commissioners were to be paid a salary not to exceed $4,800 for each commissioner during any one year, although higher amounts authorized by special act or general act of local application were permissible.
More recently, this office in Attorney General Opinion 04-08 concluded that a fire control and rescue district was authorized to provide insurance for its board members in addition to the salary or honorarium authorized by section 191.005(4), Florida Statutes. The opinion relied in part on section 112.08(2)(a), Florida Statutes, which authorizes every local governmental unit to pay out of its own funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance for its officers and employees. Toward that end, a governmental unit may enter into contracts with insurance companies or professional administrators to provide such insurance. It may also self-insure to provide any plan for health, accident, and hospitalization coverage or enter into a risk management consortium to provide such coverage. "Local governmental unit" is specifically defined to mean "any county, municipality, community college district, school board, or special district or any county officer listed in s. 1(d), Art. VIII of the State Constitution."[2]
Attorney General Opinion 04-08 discussed the earlier Attorney General Opinion, noting that while the mosquito control district's enabling legislation permitted additional compensation in the form of a special act or general act of local application, section 112.081, Florida Statutes, is neither, and therefore could not be applied to mosquito control district officers. There was, however, no similar limitation in the enabling legislation for the fire control and rescue district and thus the provisions of section 112.08, Florida Statutes, were applicable.
In the instant inquiry, there does not appear to be a limitation on the city's ability to provide health insurance to its commissioners. Municipalities are included within the definition of "local governmental unit" for purposes of section 112.08, Florida Statutes. The language "for the officers and employees of the unit" is all-inclusive and is not limited to any particular officers or employees of the local governmental units by any statutory provision of which I am aware. Where the Legislature uses a comprehensive term ("officers . . . of the unit") without qualification, it must be considered that it intended to include everything embodied within the term unless the context of the statute clearly suggests otherwise.[3] Clearly, members of the city commission, as the city's governing body, constitute officers of the city.
Moreover, unlike a special district, a municipality has broad home rule powers and may enact legislation concerning any subject matter upon which the state Legislature may act, with certain limited exceptions.[4] I am not aware of any such prohibition in the state statute that would limit the city's authority to provide health insurance coverage to the members of its governing body. Nor have you advised this office of any provision in the city charter that would prohibit such coverage.[5]
This office has previously recognized the authority of a municipality to provide insurance for the members of its governing body. For example, in Attorney General Opinion 91-58 this office stated that section 112.08, Florida Statutes, authorizes a municipality to provide and pay all or part of the premium for legal expense insurance coverage; however, the determination as to whether the city should provide such coverage to public officials as part of the officials' compensation is one the city's governing body must make.
Accordingly, I am of the opinion that section 112.08, Florida Statutes, authorizes a municipality to provide health insurance for the members of its governing body.
Question Two
Since your second inquiry, rather than referring to a specific statute, refers only to the interpretation of the term "compensation" generally under Florida law, my response must also be general in nature. I would note that the meaning of a word often is dependent upon the statute in which it is being used.[6] For example, the statute may specifically define the term.[7]
As a general rule of construction, however, commonly used words, when used in a statute, will be construed in their plain and ordinary sense.[8] "Compensation" is commonly understood to mean "payment, remuneration,"[9] and "[s]omething given or received as an equivalent or as reparation for a loss, service, or debt[.]"[10] The term has been generally defined as "payment in money or other benefit which will compensate in the strict sense, that is, make even, or be measurably the equivalent of that for which it is given."[11]
With regard to judicial construction of the term, the First District Court of Appeal in Green v. Galvin[12] considered a statute authorizing the Industrial Commission to fix the "compensation" of its employees. The court determined that "compensation" meant "that which is the equivalent of something else; it is recompense or remuneration for services as distinguished from a gift or gratuity."[13] This office, in Attorney General Opinion 71-121, recognized a distinction between salaries and compensation and concluded that life, health and accident insurance premiums paid from county funds for the benefit of county officials constituted additional compensation that was prohibited.[14] Similarly, in Attorney General Opinion 89-18 this office considered the personal use of an official vehicle by a county officer to be compensation, and in Attorney General Opinion 92-30, this office concluded that the provision of health insurance would be considered compensation.[15]
Accordingly, in light of the above, I am of the view that under Florida law the term "compensation" generally includes benefits, such as medical insurance, provided to an officer and employee.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See, e.g., Forbes Pioneer Boat Line v. Board ofCommissioners of Everglades Drainage District, 82 So. 346 (Fla. 1919); Op. Att'y Gen. Fla. 89-34 (1989).
[2] Section 112.08(1), Fla. Stat.
[3] See Florida Industrial Commission v. Growers EquipmentCompany, 12 So.2d 889, 893-894 (Fla. 1943); Florida State RacingCommission v. McLaughlin, 102 So.2d 574, 576 (Fla. 1958).
[4] See s. 166.021(3), Fla. Stat. And see s. 166.021(1), Fla. Stat., stating that "municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law."
[5] You have enclosed a portion of the city charter which provides that the city commission "shall receive an annual compensation and expense allowance as determined by the City's budget." While this language would not appear to prohibit the provision of insurance to city commissioners, questions involving the interpretation of city charters are generally referred to the attorney for the local government in question. See this office's Statement Concerning Attorney General Opinions, available on this office's website at: http:myfloridalegal.com.
[6] See, e.g., Acosta v. Richter, 671 So.2d 149 (Fla. 1996) (words in statute are not to be read in isolation but in context with other provisions of the statute).
[7] See, e.g., s. 121.021(22), Fla. Stat., defining "compensation" for purposes of the Florida Retirement System; s.287.055(2)(d), Fla. Stat., which defines "[c]ompensation" for purposes of the Consultants' Competitive Negotiation Act as the total amount paid by an agency for professional services; and s.440.02(7), Fla. Stat., defining "[c]ompensation" for purposes of the Workers' Compensation Law as the money allowance payable to an employee or to the employee's dependents as provided for therein.
[8] See, e.g., Sieniarecki v. State, 756 So.2d 68, 69 (Fla. 2000) (in absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary).
[9] Webster's New Collegiate Dictionary 230 (1975); Webster's Third New International Dictionary 463 (unabridged ed. 1981).
[10] American Heritage Dictionary of the English Language 271 (1979).
[11] See 15A C.J.S. Compensation p. 102 (1967).
[12] 114 So.2d 187 (Fla. 1st DCA 1959).
[13] Id. at 189.
[14] And see Op. Att'y Gen. Fla. 71-157 (1971) supplementing Op. Att'y Gen. Fla. 71-121 (1971). While this office concluded that such payments were not authorized in light of Ch. 145, Fla. Stat., setting forth the compensation of county officials, it should be noted that, subsequent to the issuance of these opinions, the Legislature amended Ch. 145, Fla. Stat., to provide that the payment of insurance for county officials and employees would not be compensation within the contemplation of this chapter. And see s. 112.14, Fla. Stat., stating the purpose of the law is to provide authority for the payment of premiums or charges for group insurance to county officers whose compensation is fixed by Ch. 145 in addition to the compensation provided in that chapter.
[15] And see Op. Att'y Gen. Fla. 78-12 (1978) stating that the payment of the costs of an employee's physical examination falls within the definition of additional compensation or fringe benefit or perquisite, and noting the courts have held the following to be compensation: pensions, Voorhees v. City ofMiami, 199 So. 313 (Fla. 1940) and State ex rel. Holton v. Cityof Tampa, 159 So. 292 (Fla. 1934); annual leave, Green v. Galvin,114 So.2d 187 (Fla. 1st DCA 1959); medical and life insurance benefits, Riddlestorffer v. Rahway, 196 A.2d 550 (N.J.Super. 1963); Local 456 Int. Bro. of Teamsters v. Town of Cortlandt,327 N.Y.S.2d 143 (S.Ct. Westchester County, 1971); and State ex rel.Parsons v. Ferguson, 348 N.E.2d 692, 694 (Ohio 1976).