185 N.J. Super. 9 (1982)
447 A.2d 186
PRECISION INDUSTRIAL DESIGN COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
DAVID BECKWITH, JOHN KMETZ, DOROTHY CUSICK, ROBERT CALANDRA, DONALD KRUM, DONALD MANLEY, MICHAEL CORCORAN, KEITH KURTZ, RICHARD PILKINGTON, IN THEIR CAPACITY AS THE PLANNING BOARD OF THE BOROUGH OF POMPTON LAKES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1982.
Decided May 17, 1982.
*11 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Patricia M. Barbarito argued the cause for the appellants (Einhorn, Harris & Platt, attorneys; Theodore E.B. Einhorn on the brief).
Joseph C. Petriello argued the cause for the respondent.
The opinion of the court was delivered by PRESSLER, J.A.D.
*12 This appeal requires us to reconcile the competing policies of the Open Public Meetings Act, N.J.S.A. 10:4-6, et seq., and those provisions of the Municipal Land Use Law, N.J.S.A. 40:55D-1, et seq., which mandate automatic site plan approval by a local planning board upon its failure to act within the time periods prescribed by N.J.S.A. 40:55D-10(g) and 40:55D-50.
Plaintiff Precision Industrial Design Company, Inc. is the owner of a parcel of land in Pompton Lakes, which it proposes to develop as an industrial park, a use permitted by the zoning ordinance. Apparently its plans require neither subdivision nor variance relief of any kind but do require site plan approval from the Pompton Lakes Planning Board. It accordingly submitted an application for site plan approval which was stipulated by the Planning Board to have been complete as of October 21, 1980.
The Planning Board conducted hearings on the application on October 21, November 18, and December 2, 1980. At the December 2 meeting, a resolution was read by the Planning Board's attorney. The resolution recited the Planning Board's consideration of the application and denied approval thereof for the reasons, among others, that the provisions for sewage removal and drainage were inadequate and the projected traffic over high pressure gas lines would constitute a danger to neighboring homes. A roll call vote on the resolution was then taken, 7 members voting in favor, 2 against and one abstaining.
It appears that pursuant to the Planning Board's customary practice, the reading of the resolution and the roll-call vote were sound-recorded for the purpose of subsequent transcription. The resolution thus transcribed was then circulated to the Planning Board members for their confirmation thereof at its next meeting. The next meeting had been scheduled for December 23, 1980, but was cancelled and rescheduled for January 6, 1981. A notice of the holding of the January 6 meeting for purposes both of Planning Board reorganization and for the *13 taking of "formal action" on the denial of plaintiff's site plan application was, in accordance with N.J.S.A. 10:4-8, timely posted, delivered to two newspapers, and filed with the clerk of the municipality. The notice, however, and obviously inadvertently, neglected to state the place of the meeting or the hour of its convening. When the meeting of January 6 was convened there was a failure to comply with that provision of N.J.S.A. 10:4-10(a) requiring that a statement be made for the minutes affirming that statutory notice of the meeting had been provided.
The January 6, 1981 meeting nevertheless proceeded and it does not appear that there was then any awareness by the Planning Board of the notice deficiency. The resolution read and recorded at the December 2, 1980 meeting had been reduced to writing and was adopted with one change, namely, the original statement concerning traffic over high pressure gas lines was modified to provide not that it would endanger neighboring homes but that it might so do.
Plaintiff instituted this action by complaint filed on February 18, 1981. It was its contention that the action taken by the Planning Board at the January 6 meeting was null and void by reason of the technical non-compliances with the Open Public Meeting Law above set forth. Since the time periods prescribed by N.J.S.A. 40:55D-10(g) and 40:55D-50 were contended to have therefore expired without any valid action being taken by the Planning Board on the site plan application, plaintiff demanded judgment deeming its application to be approved pursuant to the automatic approval sections of the Municipal Land Use Law. The Planning Board's practical response to the institution of the action was to hold a corrective meeting on April 21, 1981, at which, pursuant to N.J.S.A. 10:4-15(a), a confirmatory and ratifying resolution was passed readopting the resolution of January 6.
Thereafter the parties moved and cross-moved for summary judgment. The trial court denied the Planning Board's motion *14 for summary judgment dismissing the complaint and granted the motion of the plaintiff for judgment declaring its site plan application "automatically" approved. It was the judge's view that the January 6 resolution was void because of noncompliance with the Open Public Meetings Law. He further reasoned that since the time for action prescribed by the Municipal Land Use Act had expired prior to the Planning Board's attempted remedial and corrective action, that action was ineffective and, consequently, plaintiff was entitled to the benefit of the automatic approval provisions of the Municipal Land Use Act.
We agree with the trial judge's conclusion that the resolution adopted on January 6, 1981 must be declared null and void. The Supreme Court has made it absolutely plain that the prescribed provisions of the Open Public Meetings Law require strict and literal compliance and may not be satisfied by substantial compliance. Polillo v. Deane, 74 N.J. 562 (1977). Accordingly, despite the inadvertent and minor technical deviations involved in respect of the January 6, 1981 meeting, it is clear that pursuant to the express provision of N.J.S.A. 10:4-15(a), there is no alternative to the voiding of the resolution then passed.
We do not, however, agree with the trial judge's determination that the inevitable consequence of the voiding of the January 6 resolution is the affording to plaintiff of the benefit of the automatic approval provisions of the Municipal Land Use Law. For the reasons herein set forth it is our view that under the circumstances here the grant of such a remedy to plaintiff is not mandated by the terms and policy either of the Open Public Meetings Law or the Municipal Land Use Law, and we are, moreover, persuaded that the grant of that remedy here would be inimical to the public interest.
The scope and nature of the consequences of non-compliance with the Open Public Meetings Act, other than the mandated voiding of the governmental action taken at a non-complying meeting, are not expressly prescribed by the Act itself. As *15 pointed out in Polillo v. Deane, supra, 74 N.J. at 579, the municipal opportunity afforded by N.J.S.A. 10:4-15(a) to take corrective action and the authority conferred upon the courts by N.J.S.A. 10:4-16 to enter "such orders and provide such remedies" as necessary to insure compliance with the Act bespeak a legislative intention to provide "maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." Thus, as the Court further explained:
Consistent with the breadth and elasticity of relief provided in the legislative scheme, it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures which must be taken to conform with the statute. Thus, in this context, the `substantial compliance' argument * * * carries some weight on the question of remedy and relief. [Ibid.]
It is with this perspective that we view, and ultimately reject, plaintiff's contention that the violations of the Open Public Meetings Act here must result in the invocation of the automatic approval provisions of the Municipal Land Use Law.
N.J.S.A. 40:55D-50(b) requires that final approval shall be granted or denied within 45 days after submission of a completed application and provides further that "Failure of the planning board to act within the period prescribed shall constitute final approval." This 45-day time prescription has been modified by the 1979 amendment of N.J.S.A. 40:55D-10(g) effected by L. 1979, c. 216 § 7. That section, as originally enacted, required that the municipal action taken on any development application be expressed in a writing setting forth findings of fact and conclusions based thereon. Thus, not only was the municipal agency required to conduct hearings on the development application and decide whether to grant or deny it within the statutory time period, but it was also required, on pain of triggering the automatic approval mechanism of the statute, to have the formal and detailed resolution prepared and voted on within that time period as well. See Gridco, Inc. v. Zoning Board of Tp. of Hillside, 167 N.J. Super. 348 (Law Div. 1979). Recognizing the burden thus placed on the municipal agency, *16 the Legislature, by way of the 1979 amendment, afforded the municipal agency the option of a two-step action process by which, if the vote to approve or deny is taken within the last 45 days of the applicable time period, an additional period of 45 days following the vote is allowed for preparation and vote upon the formal resolution.[1] The pertinent portion of the amendment of N.J.S.A. 40:55D-10(g) provides that
The municipal agency may provide such written decision and findings and conclusions either on the date of the meeting at which the municipal agency takes to grant or deny approval, or, if the meeting at which such action is taken occurs within the final 45 days of the applicable time period for rendering a decision on the application for development, within 45 days of such meeting by the adoption of a resolution of memorialization setting forth the decision and the findings and conclusions of the municipal agency thereon. An action resulting from the failure of a motion to approve an application shall be memorialized by resolution as provided above, notwithstanding the time at which such action occurs within the applicable time period for rendering a decision on the application.
The adoption of a resolution of memorialization pursuant to this subsection shall not be construed to alter the applicable time period for rendering a decision on the application for development. Such resolution shall be adopted by a vote of a majority of the members of the municipal agency who voted for the action previously taken, and no other member shall vote thereon. The vote on such resolution shall be deemed to be a memorialization of an action of the municipal agency, and not to be an action of the municipal agency; except that failure to adopt such a resolution within the 45 day period shall result in the approval of the application for development, notwithstanding any prior action taken thereon.
The meeting of December 2, 1980 was held on the forty-fifth day following the stipulated completeness of plaintiff's site plan approval application, the last day of the time period prescribed *17 by N.J.S.A. 40:55D-50. Although the Planning Board had the option under N.J.S.A. 40:55D-10(g), as amended, merely to take a conclusionary vote to grant or deny, it did considerably more than that. It took a vote on a resolution which complied with the statute in all respects except for the fact that a written copy of it was not before each member of the Planning Board and a copy was not on that date certified by the Board's secretary since it appears that the only extant copy of the resolution was in the possession of the Board's attorney who read it into the minutes. Thus, plaintiff was then and timely apprised not only of the decision but of the reasons therefor as well. It is, therefore, arguable, although not here argued, that the action of the Planning Board taken on December 2, 1980, fully complied both with the substance and the attendant formalities mandated by N.J.S.A. 40:55-10(g) and hence that its decision was then complete without any necessity for further action.
In any event, if further action by way of memorialization were required to be taken, the deadline therefor would have been 45 days after the December 2, 1980, meeting, or January 16, 1981, ten days after the meeting which failed to comply with the Open Public Meetings Act and two months before the corrective meeting of April 16, 1981. Assuming that the memorialization invalidly occurring on January 6, 1981, was a technically necessary step in the decisional process, we are nevertheless satisfied that the failure of the consummation of that step on that date by reason of the constraints of the Open Public Meeting Act cannot be reasonably regarded as having triggered the automatic approval mechanism of the Municipal Land Use Law.
As we said in Manalapan Holding Co., Inc. v. Hamilton Township Planning Bd., 184 N.J. Super. 99, 108 (App.Div. 1982) (decided April 2, 1982, at slip opinion 10), the automatic approval mechanisms of the Municipal Land Use Law

*18 * * * were intended to preclude the practices to which municipalities theretofore resorted to endlessly protract final determination of land development applications with the consequent result of undue harrassment of developers and substantial economic prejudice to their legitimate development plans. The automatic statutory approval was, therefore, designed to encourage prompt consideration and disposition of applications for the advancement of the interests of both the developers and the public.
Careful distinctions must nevertheless be drawn between municipal inaction, the evil which the automatic approval mechanism was designed to remedy, and, on the other hand, municipal action which is timely, clearly and unambiguously expressed, and fully explained and rationalized but which, by reason of a technical rather than a substantive defect, is imperfectly taken. We are persuaded that the legislative purpose in enacting the automatic approval mechanism would be unjustifiably distorted in a manner patently subversive to the public interest if a technical defect attendant upon an express decision to deny a development application were permitted to convert the denial into an approval. See Kozub v. Opt'Hof, 180 N.J. Super. 482, 490-491 (App.Div. 1981); Aurentz v. Planning Bd. of Little Egg Harbor, 171 N.J. Super. 135, 142-143 (Law Div. 1979). We are further satisfied that no such conversion is mandated here. First, as we have already indicated, there was substantial if not perfect compliance with the requirements of N.J.S.A. 40:55D-10(g) in that a resolution stating findings and conclusions was orally read, voted upon, and sound recorded for later transcription within the time prescribed by N.J.S.A. 40:55D-50.[2]
More significantly, however, to impose upon the Planning Board and the public the consequence of automatic approval of a denied development application as a sanction for an inadvertent and technical violation of the Open Public Meetings Act would contravene the spirit and policy of that Act as construed by *19 Polillo v. Deane, supra. Such an imposition would unnecessarily deprive a municipal agency of its statutory opportunity to take remedial action. It would also constitute an abrogation of the Supreme Court mandate that the nature, quality and effect of the noncompliance with the Act be considered in the judicial fashioning of an appropriate remedy thereof. 74 N.J. at 579. That remedy must not, of course, be permitted to be more deleterious to the public interest than the wrong it is designed to correct.
The remedy of automatic approval under the circumstances here clearly was disproportionately weighed against the public interest. A proper balancing of all the competing concerns and expressions of public policy here involved compels the conclusion that the municipality must be afforded a reasonable remedial opportunity as contemplated by the Open Public Meetings Act. We, therefore, hold that when an inadvertent and purely technical violation of the Open Public Meetings Act implicates the automatic approval mechanism of the Municipal Land Use Act in a situation which does not invoke the public policy upon which the automatic approval mechanism is based, the municipality may take corrective and remedial action within a reasonable time after judicial nullification of its original decision. We further hold that in such circumstances, the running of the automatic approval period is tolled in the sense that the corrective action may be taken nunc pro tunc. To the extent any further formalization of the Planning Board's decision was here required after its initial vote, we conclude that since the corrective action was taken prior to the judicial declaration of nullity, application of the automatic approval provision of the Municipal Land Use Act was precluded and the corrective resolution was retroactively effective.
The judgment below is reversed and we remand to the trial court for entry of summary judgment dismissing the complaint.
NOTES
[1] The statement of the Assembly Municipal Government Committee to Senate, No. 1125, which was enacted as L. 1979, c. 216, explains, with respect to § 7, the amendment of N.J.S.A. 40:55D-10(g), that the Senate's original proposal was to "permit the adoption of the written resolution with findings of fact and conclusions within a mandatory 35 days after the vote to grant or deny approval of the application." The Assembly Committee amendment to the bill extended the formalization period to 45 days, "in the light of the stringent provision that failure to adopt such resolution shall result in approval of the application for development, notwithstanding any prior action taken thereof."
[2] We find without merit plaintiff's contention at oral argument that the one change noted supra which was made in the formal written resolution was of significance.