611 A.2d 1157

MUNICIPAL COUNCIL OF THE CITY OF NEWARK, PLAINTIFF, v. ESSEX COUNTY BOARD OF ELECTIONS, PATRICIA MCGARRY DRAKE, ESSEX COUNTY CLERK, AND CARMINE CASCIANO, SUPERINTENDENT OF ELECTIONS, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided July 16, 1992.

*Kathleen C. Goger*, Assistant Corporation Counsel, for the plaintiff (*Michelle Hollar–Gregory*, Corporation Counsel).

*David Dembe,* Deputy Attorney General, for the defendant, Essex County Board of Elections (*Robert J. Del Tufo,* Attorney General).

CASSINI, J.S.C.

Plaintiff, Municipal Council of the City of Newark (hereinafter "Newark"), moved for summary judgment on the issue of whether the defendant Essex County Board of Elections (hereinafter "Board") violated the Open Public Meetings Act (hereinafter "OPMA"), *N.J.S.A.* 10:4–6, *et seq.*

In the Spring of 1991, the Board met with the City Clerk of each municipality within the county to redraw the ward lines pursuant to the Municipal Ward Law, *N.J.S.A.* 40:44–9, *et seq.* The adjustment of the election district lines was approved by the Board at a meeting on May 19, 1991.

Thereafter, at a February 28, 1992 meeting, the Board adjusted several election districts in the eastern and central wards of Newark. This action was rescinded due to technical errors that occurred at the meeting. On March 9, 1992, the Board met and again adjusted the boundaries of the eastern and central wards of Newark.

Notice of the February 28, 1992 and March 9, 1992 meetings did not meet the requirements of the Open Public Meetings Act, *N.J.S.A.* 10:4–6, *et seq.*, because the notices were published in only one newspaper and were not filed with the county clerk. In addition, neither of the notices listed the meeting agenda, to the extent known, contrary to the requirements of the statute.

A Board meeting was then scheduled for May 29, 1992. This meeting was properly noticed by filing the notice with the county clerk, publishing the notice in two newspapers, complete with the proposed agenda, posting the notice and making a press alert. In short, this meeting was in compliance with the OPMA. At the meeting, the Board considered the redistricting *de novo.*

Newark now opposes and the new election boundaries in the central and east wards, as adopted by the Board at the May 29, 1992 meeting, and is seeking a partial summary judgment voiding the Board's redistricting due to the Board's failure to provide adequate notice of the earlier meetings, contrary to the requirements of the OPMA, *N.J.S.A.* 10:4–6, *et seq.*

It is apparent, and defendant concedes that, the meetings of the Board on February 28, and March 9, 1992 did not comply with *N.J.S.A.* 10:4–8, in that the notices of those meetings were not filed with the Essex County Clerk; the agendas were not published to the extent known and although there was some form of notice of the meetings, the notices were published in only one newspaper.

It is defendants' position, however, that any inadequacy concerning the above meetings was cured by the Board's properly noticed meeting held on May 29, 1992, that the Board at that meeting considered the redistricting *de novo* and that such consideration constituted corrective or remedial action as provided for in *N.J.S.A.* 10:4–15. The statute, in relevant part, provides:

"... a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act and other applicable law regarding any action which may otherwise be voidable pursuant to this section...."

In addition, plaintiff raises the issue of whether the Board complied with the provisions of *N.J.S.A.* 19:4–15, which postpones the effectiveness of redistricting until after the General Election if effected less than 75 days before the Primary Election. In this case the Primary was June 2, 1992. Plaintiff's argument is that the action taken by the Board on May 29, 1992, four days before the Primary Election, must be postponed until after the General Election based upon *N.J.S.A.* 19:4–15, because the Board's prior actions were ineffective under the OPMA. However, defendant argues that this contention is overcome by the retroactive effect of the *de novo* action of the Board on May 29, 1992, which action ratified and related

back to the February 28 and March 9, 1992 meeting dates, when the original actions were taken.

As support for defendants' "relation back" theory, they rely on *Precision Industrial Design Co. v. Beckwith*, 185 *N.J.Super.* 9, 447 *A.*2d 186 (App.Div.1982), *certif. denied*, 91 *N.J.* 545, 453 *A.*2d 863 (1982). The Appellate Division held that the provisions of the OPMA which afford a public body the opportunity to take corrective action in conjunction with conferring on the courts the authority to provide appropriate remedies to secure compliance "bespeak a legislative intention to provide maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business" (at 15). Hence, defendant argues that the action taken by the Board at the May 29, 1992 meeting was a ratification of its earlier actions because of the doctrine of flexibility in rectifying prior government action, as set forth by the court in *Precision*. Defendant also relies on *Houman v. Bor. of Pompton Lakes*, 155 *N.J.Super.* 129, 382 *A.*2d 413 (Law Div.1977), wherein the court explained the distinction between "voidable" and "void" as they relate to the OPMA. Also, the court found that a public body, pursuant to *N.J.S.A.* 10:4–15, could retroactively ratify its actions. That is, corrective action may be taken *nunc pro tunc*.

In opposition, Newark cites the case of *Polillo v. Deane*, 74 *N.J.* 562, 379 *A.*2d 211 (1977) for the proposition that the theory of relation back is not available to the defendant and therefore, any action taken at a meeting which did not comply with the requirements of the OPMA must be invalidated as a matter of law.

Although *Polillo* did not allow later meetings implicitly to rectify defects of earlier meetings, it also did not find, in fashioning a remedy, it necessary to "invalidate and repudiate all other public meetings" (at 580, 379 *A.*2d 211). Thus, *Polillo* strongly suggests that a public body may cure defects of

earlier meetings if the standards of the OPMA are satisfied at subsequent meetings.

Plaintiff, in further opposition, argues that the Appellate Division in *Precision, supra,* allowed the theory of ratification and relation back to apply, but that was a very narrow holding and only applies in the context of those particular circumstances and that it was a very narrow holding. In *Precision,* a planning board formally adopted a written resolution denying a developer's application at a meeting in violation of the OPMA, following several meetings where hearings had been held, on the application, in conformance with the OPMA. Plaintiff attempts to distinguish *Precision* based upon the contentions that first, violations of the OPMA, in that case, were merely technical in nature, second, that an issue such as the automatic approval provisions of the Municipal Land Use Law, *N.J.S.A.* 40:55D-1, does not exist here and third, there was a meeting held in conformance with the OPMA at which time the public body acted on the application.

This court is of the opinion that such distinctions are unpersuasive. The OPMA is remedial in nature, not punitive. The February 28th and March 9th, 1992 meetings did violate the Act, but the May 29, 1992 meeting cured the prior violations. The May meeting was not purely mechanical in nature, it was remedial and was a full *de novo* treatment of the issue.

As expressed by the court in *Houman,* supra, "a statute often speaks as plainly by inference as by expressed words, and the details for the accomplishment of a statutory objective do not have to be specifically spelled out with particularity" (at 161).

The court further stated:

> The Open Public Meetings Act specifically provides a procedure by which a public body may subsequently rectify any action which would otherwise be voidable for failure to comply with the requirements of the Act. *N.J.S.A.* 10:4-15(a) ... The purpose of the act is to insure the public's right to observe all phases of the governmental decision-making process. However, this section evidences the Legislature's understanding that noncompliance with the act is

not always purposefully designed to deny this right to the public, and that disruption of the orderly process of government would often follow a belated realization that a public body had, inadvertently, failed to act in compliance with the law. It should be noted that the predecessor Right to Know Law, *N.J.S.A.* 10:4–1 *et seq.*, did not contain a remedial provision. Therefore, it may be assumed that, in order to protect the equally important need of government to function effectively, the Legislature provided this remedial procedure whereby a public body may correct earlier statutory violations by subsequent action. (at 162).

This court finds that the facts of the present case are analogous to those of *Precision, supra,* where the Appellate Division viewed and interpreted the Supreme Court's opinion in *Polillo v. Deane, supra,* to mean that corrective action by a public body is allowed to foster and afford a reasonable remedial opportunity as contemplated by the OPMA.

The Supreme Court in *Polillo* pointed out:

*N.J.S.A.* 10–4–15 provides that any action taken by a public body at a meeting which does not conform to the provisions of the Act shall be voidable. However ... the public body may take corrective or remedial action by proceeding *de novo* at a public meeting held in conformity with the statute. *N.J.S.A.* 10:4–16 also states that the Court shall issue such orders and provide such remedies as shall be necessary to insure compliance with the provisions of the Act (74 *N.J.* at 579, 379 *A.*2d 211).

The Court further explained:

These remedial statutory sections contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business. Consistent with the breadth and elasticity of relief provided in the legislative scheme, it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures which must be taken to conform with the statute. Thus, in this context, the "substantial compliance" argument of defendants carries some weight on the question of remedy and relief (74 *N.J.* at 579, 379 *A.*2d 211).

With this perspective in mind, I accordingly hold that a public body may correct an action which does not comply with the OPMA by acting anew at a time when that body does comply with the OPMA. I further hold that the Board did act anew at its May 29, 1992 meeting and the corrective action taken by the Board, at that time, had the remedial effect of retroactively ratifying its actions *nunc pro tunc,* as of February 28, and March 9, 1992.

Having determined that the Board's actions of May 29, 1992 did not violate the OPMA and that those actions related back to its earlier meetings, it is not necessary for the court to consider plaintiff's claims with respect to *N.J.S.A.* 19:4–15, due to the fact that those actions were more than 75 days before the Primary Election.

Therefore, Newark's motion for partial summary judgment is denied.