881 A.2d 798 (2005)
380 N.J. Super. 240
Cate CARLEY and Margaret Mary Jones, Plaintiffs,
v.
BOROUGH OF NORTH PLAINFIELD, North Plainfield Borough Council, Councilman Robert A. Hitchcock, Councilman Frank Righetti, Councilman Nathan A. Rudy, Councilman Daniel Glicklich, and Gina Lewis, Defendants.
Superior Court of New Jersey, Law Division.
Decided April 13, 2005[1].
*799 William T. Cooper, III, for plaintiffs (Cooper & Cooper, attorneys).
Michael Fitzgerald, Linwood, for defendant Gina Lewis (Fitzgerald, McGroarty & Lipari, attorneys).
Alfred Scerni, Pleasantville, for defendants North Plainfield Borough Council, and Councilmen Glicklich, Hitchcock, Righetti and Rudy (Shaffer and Scerni, attorneys).
HARRIET DERMAN, P.J.S.C.
The issue before this court is the tension between the latitude of N.J.S.A. 10:4-15 and the deadlines of N.J.S.A. 40A:16-11, and specifically whether a municipal governing body may meet belatedly to fill a partisan vacancy at a second meeting after the first meeting fails to satisfy the requirements of the Open Public Meetings Act ("OPMA"), P.L. 1975, c. 231 (c. 10:4-6 et. seq.).
After a vacancy occurred in the North Plainfield Borough Council, engendered by the resignation of a Republican council member, effective October 15, 2004, the time frames of N.J.S.A. 40A:16-11 were implicated. This section reads as follows:
If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, no later than 15 days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy. The governing body shall, within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy. If the governing body fails to appoint one of the nominees within the time prescribed herein, the municipal committee that named the three nominees shall, within the next 15 days, appoint one of the nominees as the successor to fill the vacancy, and such person shall be sworn in immediately. If the municipal committee which nominated the incumbent fails to submit the names of the nominees within the time prescribed herein, the governing body may, within the next 15 days, fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant. [emphasis added.]
Names were not submitted on a timely basis by the Republican Municipal Committee, providing the governing body the opportunity to fill the vacancy within the next fifteen days with an undesignated Republican nominee. The Council did so, naming Gina Lewis ("Defendant") as a member of the Plainfield Borough Council at a special meeting held on November 13, 2004. Unfortunately, this court found, on application by two Republican Council Members, that the requirements of the OPMA N.J.S.A. 10:4-8, were not satisfied for several reasons, including the failure to deliver timely the notice to two newspapers and the failure to post the notice forty-eight hours in advance of the meeting. Strict compliance is required to satisfy the purpose of the "sunshine" law. Polillo v. Deane, 74 N.J. 562, 578, 379 A.2d 211 (1977).
Upon the invalidation of the action of the Council, the attorney of the unseated *800 defendant asked this court to consider the application of N.J.S.A. 10:4-15, which authorizes corrective action and allows for subsequent and remedial action by the Council to relate back to the original appointment date. N.J.S.A. 10:4-15 reads, in pertinent part, as follows:
a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act and other applicable law regarding any action which may otherwise be voidable pursuant to this section...
The Supreme Court has acknowledged that under some circumstances strict compliance can be ameliorated by the remedial thrust of N.J.S.A. 10:4-15. Polillo, 74 N.J. at 579, 379 A.2d 211. The Polillo court acknowledged the need for "maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." Ibid.
The issue then for this court is whether the failure to fill a seat within the time frame of the statutory scheme of N.J.S.A. 40A:16-11, a scheme meticulously prescribed by the Legislature for municipal vacancies, because of violations of the OPMA, N.J.S.A. 10:4-8, can be remedied by N.J.S.A. 10:4-15. In reviewing cases which have authorized an essentially retroactive accommodation, this court is of the view that the matter before it is easily differentiated from case law authorizing remedial action in view of the legislatively mandated time constraints.
In Polillo, supra, 74 N.J. at 579-80, 379 A.2d 211, the Supreme Court found that the "sunshine" law, N.J.S.A. 10:4-8(d), in effect at that time, applied to the Faulkner Act Charter Commission meetings. The Commission had held twenty-seven regular meetings and then one at the home of the objecting plaintiff and an "emergency" session as well. Ibid. The Commission filed its report within the nine-month deadline of the Faulkner Act, N.J.S.A. 40:69A-10. The plaintiff, a member of the Commission, claimed lack of compliance with the "sunshine" law for failure to provide formal notice for at least three of the meetings and for failure to disclose the Commission's agenda in the several notices that were sent. Ibid. After the Supreme Court held that the "sunshine" law applied to the commission meetings and strict adherence with the notice provisions was, required, it looked to N.J.S.A. 10:4-15 and N.J.S.A. 10:4-16, which allow a court to provide remedies as "shall be necessary to ensure compliance." Ibid.
The Supreme Court found that the spirit of the OPMA was not seriously undermined. Justice Pashman wrote:
Consistent with the breadth and elasticity of relief provided in the legislative scheme, it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures, which must be taken to conform with the statute.
[Id. at 580, 379 A.2d 211.]
The Supreme Court therefore salvaged the work product of the meetings where hearings had been held and testimony and evidence had been provided, but invalidated the final governmental action taken by the Commission, which was its recommendation as to the form of government to be considered by the voters. Ibid. Despite finding "substantial compliance," the Supreme Court held that the final, determinative and decisive meeting where a recommendation had been made had to be invalidated.[2]Ibid.
*801 A subsequent Law Division case, Houman v. Pompton Lakes, 155 N.J.Super. 129, 159, 382 A.2d 413 (Law Div.1977), authorized retroactive ratification of action taken at a special meeting, to the consternation of the plaintiffs who objected to the hiring of an attorney to advance tax appeals with the State. The Houman court analyzed ratification and noted that New Jersey courts have "consistently held that where a public body has the power and authority to enter into an agreement only if timely, but has failed to follow proper procedures in exercising that authority, it may subsequently ratify the agreement." Ibid. (citing Johnson v. Hosp. Serv. Plan, 25 N.J. 134, 135 A.2d 483 (1957); DeMuro v. Martini, 1 N.J. 516, 64 A.2d 351 (1949); City Affairs Comm. v. Bd. of Comm'rs., 134 N.J.L. 180, 46 A.2d 425, (E. & A.1946); Riddlestorffer v. Rahway, 82 N.J.Super. 36, 196 A.2d 550 (Law Div. 1963)).
The Houman court differentiated between agreements which are ultra vires in the primary sense, as beyond the scope of municipal authority, and those which are ultra vires in the secondary sense and may be subsequently ratified. Houman, supra, 155 N.J.Super. at 160, 382 A.2d 413. The court noted that many of the ratification cases dealt with contracts and opined that a decision to proceed with tax appeals and hire an attorney for that purpose was the type of action that could be ratified. A government must function effectively. "Thus, where the decision-making process is repeated in compliance with the act, the objective of public observance is fulfilled and, as long as that subsequent action is retroactive in effect, governmental order is insured." Ibid.
To thwart the mandate of automatic site plan approval when the local planning board had acted within the appropriate time period but its effectiveness had been vitiated by a failure to comply with the OPMA, the Appellate Division in Precision Indus. Design Co. v. Beckwith, 185 N.J.Super. 9, 19, 447 A.2d 186 (App.Div. 1982), authorized remedial action:
We, therefore, hold that when an inadvertent and purely technical violation of the Open Public Meetings Act implicates the automatic approval mechanism of the Municipal Land Use Act in a situation which does not invoke the public policy upon which the automatic approval mechanism is based, the municipality may take corrective and remedial action within a reasonable time after judicial nullification of its original decision.
The Precision court wished to avoid an automatic approval by default for a municipal action, which is otherwise "timely, clearly and unambiguously expressed," but thwarted by a technical defect in the notice of the meeting. Id. at 18, 447 A.2d 186.
The final edifying case and the one upon which defendant relies is City of Newark v. Essex County Bd. of Elections, 259 N.J.Super. 211, 611 A.2d 1157 (Law Div. 1992). The Newark court allowed a meeting which had considered redistricting under the Municipal Ward Law, N.J.S.A. 40:44-9, to relate back to an earlier meeting under N.J.S.A. 10:4-15, as an effective de novo effort. Id. at 215-16, 611 A.2d 1157. The plaintiff claimed this was belated for purposes of N.J.S.A. 19:4-15, which postpones the effect of redistricting until after the General Election if completed less than seventy-five days before the Primary Election. Id. at 214, 611 A.2d 1157. *802 The court noted, however, that work had been undertaken on this project in the spring of 1991 and approved by the Election Board on May 19, 1991. Id. at 213, 611 A.2d 1157. In early 1992, several election district boundaries were adjusted. Ibid. This action was rescinded and again adjusted on March 9, 1992, but both the February and March meetings had defects under N.J.S.A. 10:4-6. Ibid. A corrective meeting occurred on May 29, 1992. Id. at 216, 611 A.2d 1157.
The case at bar does not profit from the rationale of Houman; Precision or Newark. There is no need to rescue the substantial work of redistricting where early meetings satisfied the "sunshine" law and there was significant participation by the public. There is no necessity to avoid an automatic site plan approval process or prevent municipal paralysis. There is no compelling need to salvage a settlement agreement between a planning board and a developer, see Gandolfi v. Town of Hammonton, 367 N.J.Super. 527, 540, 843 A.2d 1175 (App.Div.2004), nor is there a need to ratify a Board of Education action from a prior meeting, authorizing a suit to void the mayor's unlawful appointments. See Bd. of Educ. v. Brown, 233 N.J.Super. 242, 247, 558 A.2d 520 (App.Div.1989). In this matter, the Borough Council attempted tardily to satisfy N.J.S.A. 40A:16-11, but inadvertently violated the "sunshine" law. The rationale of the OPMA is relevant. An agenda item to fill a council vacancy is the kind of action for which public participation is desirable. Appointment of a new partisan council member, not the choice of the incumbent's municipal committee, requires public viewing and participation to insure transparency in the process. See Polillo, 74 N.J. at 569-572, 379 A.2d 211.
To allow remedial action in this context would trump the statutory prerogative and render the deadlines and timeframes of the statute a nullity. It is not a question of ratifying governmental action to insure the continued operations of municipal government. There is no statutory authority to act out of time, making the action fatally ultra vires. See Houman, 155 N.J.Super. at 169, 382 A.2d 413. The meeting to be corrected does not represent the culmination of a study or commission work, but an error in satisfying a specific and unambiguous deadline. Furthermore, the municipal committee cannot be given additional time to fill the vacancy for its party beyond the fifteen days enumerated in N.J.S.A. 40A:16-11 and neither can the governing body.
Also, the attorney for the plaintiff cites to N.J.S.A. 40A:16-13 as authorization for a vacancy if the municipal governing body does not act timely in accordance with N.J.S.A. 40A:16-11. That statute, however, was amended in 1990 to delete a specific reference to N.J.S.A. 40A:16-11.[3] Judge Serpentelli in Brubaker v. Ship Bottom Bor., 246 N.J.Super. 55, 59, 586 A.2d 867 (Law Div.1990), discussed the 1990 amendments in the context of the case before him.
In ruling that the municipal governing body must select from one of the three submitted names and is not free to choose its own nominee, Judge Serpentelli discussed the legislative history of N.J.S.A. 40A:16-11 and the "apparent intent" of the legislation to "limit the ability of the majority party to weaken minority representation on the body by choosing individuals with limited abilities or with political principles compatible with those of the majority *803 party." Ibid. (citing Senate Statement to S. 1217 (1978); Assembly Statement to S 1217 (1979)). Although the Legislature in omitting a reference to N.J.S.A. 40A:16-11 in N.J.S.A. 40A:16-13 could not have anticipated the circumstances of this case  the failure of the governing body to satisfy the OPMA and thereby the loss of an opportunity by the majority to fill the seat with its chosen nominee of the other party  the concern for avoiding manipulation by a political party against the party of the resigning incumbent is no less compelling.
It would appear then that a vacancy results not by specific statutory mandate, but by default. A council cure under these circumstances, imposing a partisan player not of the incumbent committee's choosing, would be the mischief the Legislature sought to avoid.
Therefore this court denies the defendants' application for authorization for the Council to take corrective or remedial action to cure the defect in the appointment of Gina Lewis to fill the vacancy on the Borough Council.
NOTES
[1] This opinion supersedes an oral opinion rendered from the bench on March 18, 2005.
[2] The court in Aronowitz v. Planning Board, 257 N.J.Super. 347, 358-359, 608 A.2d 451 (Law Div. 1992), also allowed a town planning board to utilize exhibits and testimony provided by the public from a meeting that had failed to satisfy the OPMA. The evidence was used at a subsequent meeting which was re-opened to take additional public testimony and was validly noticed.
[3] In addition, N.J.S.A. 40A:16-13 specifically refers to N.J.S.A. 40A:16-12, not N.J.S.A. 40A:16-11.