NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0937-24

BOROUGH OF CALDWELL,

    Plaintiff-Respondent,

v.

COZZARELLI CIRMINIELLO
ARCHITECTS, LLC,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 31, 2025

APPELLATE DIVISION

Argued September 11, 2025 – Decided October 31, 2025

Before Judges Smith, Berdote Byrne, and Jablonski.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3126-24.

Marlo J. Hittman argued the cause for appellant.

Michael A. Ierino argued the cause for respondent (Florio Perrucci Steinhardt Cappelli & Tipton, LLC, attorneys for respondent; Craig P. Bossong and Michael A. Ierino, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

Defendant Cozzarelli Cirminiello Architects, LLC ("CCA") successfully sought leave to appeal from an October 11, 2024 order denying its motion to dismiss the complaint of plaintiff Borough of Caldwell ("Caldwell") for failure to state a claim upon which relief may be granted. Because we conclude the learned professionals exception to the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, applies to architects, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

Caldwell contracted several times with CCA to obtain architectural services between 2019 and 2022. The scope of services included design, construction, and rehabilitation of certain public facilities in town. The limited record shows that after CCA submitted a series of detailed written proposals to Caldwell outlining the scope of work and project costs, Caldwell eventually integrated these proposals into professional services contracts. The contracts were authorized by Caldwell's governing body, which adopted corresponding Resolutions 2-72, 9-195, 9-196, 1-33, and 12-267.

The undisputed record shows that each invoice CCA submitted to Caldwell for payment was approved in advance by Caldwell municipal officials. The record also shows that Caldwell only paid the invoices after they were voted on by Caldwell's governing body. CCA maintains that no

payment was even questioned by Caldwell until after the November 2022 municipal election. Following the election, the newly constituted Caldwell governing body terminated CCA's contracts for architectural services.

On May 7, 2024, Caldwell sued CCA, asserting three causes of action: breach of contract; unjust enrichment; and violation of the CFA. The complaint alleged that although Caldwell paid CCA for certain products and services, CCA failed to produce the products or perform the services. The alleged breaches included: CCA's failure to produce construction documents; CCA's failure to support Caldwell by consulting on construction bids; CCA's failure to perform certain administrative tasks; double billing by CCA on the design of the borough hall and police department projects; and improper billing of certain tasks the parties agreed would be billed at an hourly rate. Caldwell's unjust enrichment count sought relief for the same actions alleged in the breach of contract count. Finally, count three alleged that CCA violated the CFA, which triggered liability under the statute.

CCA moved to dismiss the complaint pursuant to Rule 4:6-2(e), articulating four theories. First, it argued Caldwell's suit was not properly authorized by its governing body under the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, and Chapter 11 of the Caldwell municipal ordinances. Second, it contended Caldwell's complaint was legally insufficient

3

because it was based on a forensic accountant's opinion about architectural services, an area outside the accountant's expertise, and failed to set out facts based on a diligent investigation as required by Rule 1:4-8. Third, it argued that the unjust enrichment claim should fail, as Caldwell did not allege any benefit retained outside of the contract and was therefore duplicative. Finally, it posited that Caldwell's CFA claim was barred by the learned professionals exception, which CCA contends should extend to architects just as it does to doctors, lawyers, and engineers.

After argument, the trial court denied the motion, issuing a statement of reasons in support of its order. The court found Caldwell pled essential facts in each of the three counts sufficient to defeat the motion to dismiss. Citing Rule 4:5-6, the court rejected CCA's inconsistent pleading argument. Noting that it "found no law specifically applying the learned professional[s] exception to architects," and that CCA failed to identify any "'patent and sharp' conflict as between the [CFA] and the scheme regulating architects," the court declined to dismiss Caldwell's CFA count. Finally, the court also rejected CCA's argument that Caldwell's claims failed because it presented an expert unqualified to opine about architectural services. The trial court did not address CCA's procedural defects argument.

On appeal, CCA challenges the court's rejection of both its procedural

A-0937-24

and learned professionals exception arguments.  Finally, CCA argues that Caldwell's unjust enrichment claim was inadequately pled.

## II.

Our standard of review on a Rule 4:6-2(e) motion to dismiss is de novo, and we "owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019).  "The standard traditionally utilized by courts to determine whether to dismiss a pleading . . . is a generous one."  Green v. Morgan Props., 215 N.J. 431, 451 (2013).  As such, "[a] plaintiff is entitled to a liberal interpretation and given the benefit of all favorable inferences that reasonably may be drawn."  State Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 478 (App. Div. 2006).  As a result, motions to dismiss "should be granted in only the rarest of instances." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772 (1989); see also Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 282 (2004).

"At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint."  Printing Mart, 116 N.J. at 746.  Rather, "the test for determining the adequacy of a pleading . . . [is] whether a cause of action is 'suggested' by the facts."  Ibid. (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189

(1988)).  To that end, courts must "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim,'" and grant the "'opportunity . . . to amend if necessary.'"  Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).  Notwithstanding this liberality, "the essential facts supporting [the] cause of action must be presented in order for the claim to survive," and "conclusory allegations are insufficient in that regard."  Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, (App. Div. 2012) (citing Printing Mart, 116 N.J. at 768).

## III.

## A.

## i.

CCA argues that the trial court lacked subject matter jurisdiction regarding this complaint because Caldwell failed to comply with its own ordinance scheme and OPMA before filing suit.  Stated another way, CCA contends that since Caldwell adhered to, for years, its own clearly defined process to approve CCA's invoices, and because those approvals were ratified by the duly elected Caldwell governing body, it follows that Caldwell must adhere to a similar process to revoke these approvals before it files a complaint alleging that CCA received improper payments.  CCA contends that Caldwell's

6

failure to do so leaves the trial court without subject matter jurisdiction. CCA also challenges whether Caldwell followed OPMA in its retention of a forensic expert to scrutinize previous payments to CCA.

A local government's alleged failure to follow proper procedure will not necessarily defeat litigation it has commenced. Our well-settled jurisprudence treats a municipality's defective attempts to authorize its actions as potentially curable, and not fatal to litigation. When discovery reveals defects in a government entity's initial authorization, our courts have found its actions can be authorized in different ways. Examples include: an invalid appointment may be capable of later ratification by municipality; a voidable sheriff's sale may be corrected through proper execution under statutory language; a violation of OPMA may be corrected by the municipality under the statute; unauthorized contracts may later be ratified by a properly authorized municipal authority. See, e.g., Grimes v. City of E. Orange, 288 N.J. Super. 275, 279-80 (App. Div. 1996); Indep. One Mortg. Corp. v. Gillespie, 289 N.J. Super. 91, 94 (App. Div. 1996); Precision Indus. Design Co. v. Beckwith, 185 N.J. Super. 9, 14-15 (App. Div. 1982); De Muro v. Martini, 1 N.J. 516, 522 (1949).

Challenges to a municipality's authority to act typically involve questions of fact. Determining whether proper OPMA procedures were followed, whether appropriate resolutions were passed, or whether the mayor

A-0937-24

or council had authority to even retain litigation counsel requires factual development that we view as inappropriate for resolution on dismissal motions. Rather, when we review trial court orders on motions to dismiss, we are limited to the pleadings and must "'pass no judgment on the truth of the facts alleged' . . . and must 'accept them as fact only for the purpose of reviewing the motion to dismiss.'" <u>Mueller v. Kean Univ.</u>, 474 N.J. Super. 272, 283 (App. Div. 2022) (quoting <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 166 (2005)).

In reviewing the complaint, CCA's allegations regarding Caldwell's failure to follow proper municipal procedures before filing suit represent variations on an inapplicable theme. We conclude there is no basis to dismiss the complaint for lack of subject matter jurisdiction.

<u>ii.</u>

Turning to Caldwell's breach of contract and unjust enrichment claims, we easily conclude that the trial court was correct in finding Caldwell properly established a fundament of a cause of action for both claims. We comment briefly.

In sum, Caldwell alleges that CCA was paid for services they did not provide and submitted incorrect or deliberately inflated invoices. The detailed allegations contained in the complaint are sufficient to survive CCA's <u>Rule</u>

8

4:6-2(e) motion. Caldwell's unjust enrichment count rests on the same allegations as its breach of contract count, so that claim survives as well. For completeness' sake, we note that Caldwell may ultimately prevail on either of those theories, but not on both. Caputo v. Nice-Pak Prods., Inc., 300 N.J. Super. 498, 507 (App. Div. 1997). That said, alternative theories of recovery may be pled at this juncture. R. 4:5-6; see e.g., N.Y.-Conn. Dev. v. Blinds-To-Go, Inc., 449 N.J. Super. 542, 577 (App. Div. 2017); Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 287-88 (App. Div. 2007). We conclude the trial court properly denied CCA's Rule 4:6-2(e) motion to dismiss counts one and two, the breach of contract and unjust enrichment claims.

B.

We next turn to count three, Caldwell's CFA claim. CCA argues that the trial court erred in failing to apply the learned professionals exception under the CFA. CCA contends that it provided only licensed professional services without any ancillary non-professional services, and that the presence of a comprehensive regulatory scheme governing architects under N.J.S.A. 45:3-1 to -49 and N.J.A.C. 13:27-1.1 to -9.9 precludes it from liability under the CFA. To support its position, CCA relies on Blatterfein v. Larken Assocs., 323 N.J. Super. 167 (App. Div. 1999), arguing that Blatterfein stands for the proposition that there is a learned professionals exception for architects.

9

Caldwell argues that <u>Shaw v. Shand</u>, 460 N.J. Super. 592 (App. Div. 2019), stands for the proposition that the learned professionals exception applies only to historically recognized learned professions, and that no case law establishes architects as exempt from the CFA.  Finally, Caldwell argues that even if a regulatory scheme exists for architects, CCA failed to demonstrate the "patent and sharp" conflict required under <u>Lemelledo v. Beneficial Mgmt. Corp. of Am.</u>, 150 N.J. 255, 270 (1997), between the architectural regulatory scheme and the CFA.

We consider the applicable law, starting with the broad brush strokes of the CFA.

"The CFA was enacted to 'provide[] relief to consumers from "fraudulent practices in the market[place].""  <u>Dugan v. TGI Fridays, Inc.</u>, 231 N.J. 24, 50 (2017) (first alteration in original) (quoting <u>Lee v. Carter-Reed Co.</u>, 203 N.J. 496, 521 (2010)).

> The CFA vests the Attorney General with jurisdiction to enforce its provisions through a variety of mechanisms, N.J.S.A. 56:8-3 to -8, -11, -15 to -18, -20, but it also provides individual consumers with a cause of action to recover refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble damages for violations, whether in good faith or otherwise, N.J.S.A. 56:8-19.  The Attorney General enforces the CFA through the Division of Consumer Affairs.  N.J.A.C. 13:45-1.1 to -5.6.
>
> [<u>Lemelledo</u>, 150 N.J. at 264 (citation reformatted).]

The CFA is "applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121 (2014) (quoting Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011)).  To that end, the CFA prohibits

> [t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.
>
> [N.J.S.A. 56:8-2.]

The CFA defines the term "merchandise" to include "objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).  In turn, "services" have been broadly construed "to cover a wide variety of practices."  Lemelledo, 150 N.J. at 264; see, e.g., Shaw, 460 N.J. Super. at 607; Quigley v. Esquire Deposition Serv., LLC, 400 N.J. Super. 494, 505 (App. Div. 2008).

Understanding that "the CFA's reach is not unbounded," and "[c]ourts have 'recognized a need to place reasonable limits upon the operation of the [CFA] "despite broad statutory language, so that its enforcement properly

11

reflects legislative intent, however ascertained,'"" we consider limitations on its reach. Lee v. First Union Nat'l Bank, 199 N.J. 251, 262-63 (2009) (second alteration in original) (quoting DiBernardo v. Mosley, 206 N.J. Super. 371, 375 (App. Div. 1986)).

One such limitation is the learned professionals exception, "a judicially crafted rule, whereby certain transactions fall outside the CFA's purview because they involve services provided by learned professionals in their professional capacity." Id. at 263; see, e.g., Macedo v. Dello Russo, 178 N.J. 340, 346 (2004); Vort v. Hollander, 257 N.J. Super. 56, 62 (App. Div. 1992). Our Supreme Court formally recognized the exception in Macedo, explaining:

> Certainly no one would argue that a member of any of the learned professions is subject to the provisions of the [CFA] despite the fact that he [or she] renders "services" to the public. And although the literal language may be construed to include professional services, it would be ludicrous to construe the legislation with that broad a sweep in view of the fact that the nature of the services does not fall into the category of consumerism.
>
> [178 N.J. at 344 (quoting Neveroski v. Blair, 141 N.J. Super. 365, 379 (App. Div. 1976)).]

In Lee, the Court explained that "[t]he rationale underlying the learned professionals exception is that uniform regulation of an occupation, where such regulation exists, could conflict with regulation under the CFA." 199 N.J. at 264.

12

The Macedo Court noted that the Legislature had never amended the CFA to expressly include professionals and abrogate the judicial exemption, despite earlier case law articulating the exception. 178 N.J. at 345-46. The Court stated:

> In fact, the only major substantive change concerning the scope of the CFA came in 1976, when the Act was amended to include the sale of real estate in the definition of "merchandise."
>
> Contemporaneous with that amendment, the first judicial opinion addressing the applicability of the CFA to professionals was rendered, coincidently relating to the sale of real estate. In Neveroski, the Appellate Division was faced with the question of whether a real estate broker who deliberately concealed the termite infestation of a home from potential buyers was subject to CFA liability. In ruling that it was not, the court relied on two basic premises. The first was that the CFA had been amended after the acts complained of specifically to include the sale of real estate, thus indicating that the prior version did not encompass that subject. Second, the court stated:
>
> > A real estate broker is in a far different category from the purveyors of products or services or other activities. He is in a semi-professional status subject to testing, licensing, regulations, and penalties through other legislative provisions. See N.J.S.A. 45:15-1[ to -42]. Although not on the same plane as other professionals such as lawyers, physicians, dentists, accountants or engineers, the nature of his activity is

13

recognized as something beyond the ordinary commercial seller of goods or services—an activity beyond the pale of the act under consideration.

[Macedo, 178 N.J. at 344 (quoting Neveroski, 141 N.J. Super. at 379).]

The Macedo Court also tells us that Lemelledo did not suggest a contrary conclusion regarding the applicability of the CFA to learned professionals. The Court explained:

[In Lemelledo,] in addressing loan-packing, we held that the mere existence of an alternative regulatory scheme by the Department of Banking and Insurance[] did not automatically eliminate the applicability of the CFA. Instead, we held that a direct conflict between the schemes would be required in order to conclude that the Legislature did not intend the CFA to apply. Lemelledo, 150 N.J. at 270. Lemelledo would be dispositive here [in Macedo] if the issue presented was whether the separate regulatory scheme governing physicians preempts the application of the CFA. [Lemelledo] is entirely irrelevant to the threshold question of whether the CFA applies to learned professionals in the first instance.

[Macedo, 178 N.J. at 345 (citation reformatted).]

We consider the threshold question from Macedo: Do architects qualify as a learned profession requiring extensive knowledge?

CCA contends that Blatterfein stands for the proposition that architects are covered by the judicially created learned professionals exception. We

14

disagree. In Blatterfein, we held that an architect was subject to CFA liability where the facts showed that the marketing firm was engaged in activities outside the traditional scope of architectural services, namely the marketing and sales of real estate. We stated:

> By their very nature, an architect's professional services typically relate to real estate. Where the question is solely one concerning the quality of those professional services, there may be no adequate basis for asserting liability under the [CFA]. But where the architect has involved [themselves] either as a principal or a retained professional in a real estate marketing venture wherein he permits his services to be held out as part of what is being sold, or provided by way of influencing purchasers to enter into contracts, or to maintain contractual relationships, [they] become[] subject to the [CFA] just as every other person involved in inducing the sale or preserving the transaction may be.

> [Blatterfein, 323 N.J. Super. at 183.]

While Blatterfein contemplated extension of the learned professional exception to architects, it did not do so. However, the record before us justifies another look at the question.

Architects in New Jersey are subject to licensing requirements, under N.J.S.A. 45:3-1, -46 and N.J.A.C. 13:27-1.1, -7A.6. The statute and its corresponding regulations require applicants for an architecture license to meet educational, experiential, and examination standards. Architects must

15

maintain their credentials through continuing education and competency requirements. Our review of the limited record before us reveals no dispute that CCA was "operating in [its] professional capacit[y]" in its dealings and contracts with Caldwell. Macedo, 178 N.J. at 345-46. We conclude that where architects provide services consistent with the tenets of their profession and do not venture into unrelated endeavors outside of their field, they are exempt from liability under the CFA under the learned professionals exception.

We also conclude that the "patent and sharp" conflict analysis called for under Lemelledo, 150 N.J. at 270, is not required here. The Lemelledo Court was faced with a much closer question concerning the applicability of the learned professionals exception to a financial services firm alleged to be involved in a "loan packing" scheme. As the Supreme Court explained in Macedo, a Lemelledo analysis would be relevant if the issue presented here was whether the separate regulatory scheme governing architects preempted the CFA's application. 178 N.J. at 345. Such an analysis was warranted in Lemelledo, because the defendant financial services firm sought the safe harbor of the learned professionals exception. Given the CFA allegations in the Lemelledo complaint, the Court was required to closely examine and compare the financial services industry regulatory scheme established by the

Department of Banking and Insurance to the consumer protection-oriented regulatory scheme of the CFA to determine whether a "patent and sharp" conflict between the two existed such that the CFA would not apply to financial services firms. Seven years later, the Macedo Court noted that such an analysis, "is entirely irrelevant to the threshold question of whether the CFA applies to learned professionals in the first instance." 178 N.J. at 345. We agree and see no need to belabor the point. The learned professionals exception applies to architects where the question is solely one concerning the quality of those professional services. See Blatterfein, 323 N.J. Super. at 183.

We conclude that the CFA's learned professionals exception applies to architects on the record before us. Given our holding, the portion of the trial court's order denying CCA's motion to dismiss the CFA count is reversed. The remainder of the order is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0937-24